Peters, Appellant, *v.* Davis.

Argued March 16, 1967.  Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert N. Spaeder,* with him *Marsh, Spaeder, Baur, Spaeder & Schaaf,* for appellants.

*Bernard F. Quinn,* with him *Quinn, Leemhuis, Plate & Buseck,* for appellees.

OPINION BY MR. JUSTICE JONES, June 29, 1967:

This appeal involves, primarily, the character and the extent of the relief to be afforded by a court of equity for an *intentional* violation of building line restrictions contained in a deed.

On August 26, 1960, Russell T. Davis and Arlene W. Davis (Davis), purchased from Lake Cliff Motels, Inc., one lot and part of another lot in Lake Cliff Park Addition, Lawrence Park Township, Erie County. Both lots were subject to certain building restrictions established in 1950 by the then owners of the land and entitled "Declaration of Protective Covenants and Restrictions of Lake Cliff Park Addition Subdivision."[1] This "Declaration" made reference to a map duly recorded in Erie County which described the entire property subject to the restrictions. Two of such restrictions are presently pertinent: (1) restriction 2 which provided "No building shall be located nearer to the front line or nearer to the side street line than the

---

[1] Such restrictions are ". . . for the benefit of the plaintiff as well as all the owners of adjoining lots affected by [their] violation, and [are] enforceable in equity: Clark v. Martin, 49 Pa. 289": *Wimer v. Yellin,* 286 Pa. 33, 35, 132 A. 809 (1926).

building restriction lines shown on the recorded plan"; (2) restriction 7 provided "That the Purchaser shall in every respect comply with the rules, regulations and ordinances of the Township of Lawrence Park in the obtaining of building permits and in the securing approval of the Lawrence Park Planning Commission before the erection of any building on said property." The "Declaration" further provided that: "If the parties hereto or any of them, or their heirs or assigns shall violate or attempt to violate any of the covenants herein, it shall be lawful for any other person or persons owning any real property situated in said development or subdivision, to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenants and to prevent him or them from so doing or to recover damages or other dues from such violation." The restrictions contained in the "Declaration" are similar to those contained in the Lawrence Park Township Zoning Ordinance as applicable to the Davis property.

In the Lake Cliff Motels-Davis deed, Davis expressly agreed to comply with all these restrictions. Under these restrictions and the zoning ordinance in effect in the area where the Davis property was located, there were definite and specific setback and side yard requirements. Applying these requirements to the Davis property, the setback line for a building thereon was to be 25 feet from Halley Avenue and 30 feet from Lakeside Drive with a side yard restriction of 6 feet. In June 1961, Davis employed one Robert Kraft, a building contractor, to lay the building stakes for a proposed dwelling house on the Davis property but he would not do so until he was assured of the setback building lines under the restrictions and the zoning ordinance. Davis and Kraft, together with the Township Building Inspector and Zoning Administrator, went to the Davis property prior to any construction thereon

and placed the building stakes where they were to be. Sometime thereafter, the Township Building Inspector and Zoning Administrator again visited the property to discuss with Davis compliance with the zoning ordinance. On the reverse side of Davis' building permit, he sketched the house on the lot showing the required setback lines and discovered a 3 foot violation of the setback line on Halley Avenue. The zoning administrator then granted a 2 foot setback variance along Halley Avenue and instructed Davis to move his dwelling back 1 foot.

Construction of Davis' dwelling was begun. Prior to completion of the dwelling, on August 23, 1962, Norman L. Peters and Alice E. Peters (Peters), adjoining and abutting property owners, through their counsel notified Davis that he was violating the setback lines on Lakeside Drive and Halley Avenue and requested that the offending portions of the building, then in construction, be removed from the restricted areas. Actually, there was a 7.45 foot setback violation plus a 2.6 foot roof overhang[2] on the Halley Avenue side, a 3 foot violation along Lakeside Drive and a 2.6 foot side line violation on the southwest side of the dwelling.[3] Peters' letter noted the detrimental effect which such violations had upon Peters' easements, under the restrictions, for light, view and air over the land of Davis. Despite Peters' announced intention to institute suit to compel Davis' compliance with the restrictions, Davis proceeded with the completion of the dwelling even though the dwelling as constructed

---

[2] As to overhanging eaves, see: 20 Am. Jur. 2d §246, p. 811.

[3] The trial court found the Lakeside Drive and the side line violations to be "inconsequential" and only ordered the removal of the Halley Avenue side of the house from the restricted area. The court en banc limited its discussion of the matter to that violation. Consequently, we will only consider the Halley Avenue violation on this appeal.

violated the setback restrictions and the zoning ordinance.

Upon Davis' noncompliance with the restrictions and zoning ordinance provisions, Peters instituted an equity suit in the Court of Common Pleas of Erie County to enjoin Davis from completing the dwelling and for a mandatory injunction directing that Davis remove the offending portions of the dwelling from the restricted setback areas. Upon issue joined, the matter was heard before the Honorable ELMER L. EVANS, President Judge of the Court of Common Pleas of Erie County.

After a hearing, the chancellor found, inter alia, the following facts: (1) prior to the construction of this dwelling, Davis was fully aware of the restrictive covenants as well as of the provisions of the zoning ordinance; (2) that the zoning administrator, who knew nothing of the encroachment on Lakeside Drive and in the area between the Davis property and the adjoining property to the west, informed Davis that, even with a 2 foot variance, the setback violation along Halley Avenue was still violated by 1 foot and that such encroachment should be removed; (3) Davis not only disregarded the zoning administrator's instructions but encroached over the Halley Avenue setback to the extent of 7.45 feet with an additional overhang of eaves to the extent of $2\frac{1}{2}$ feet; (4) the encroachment by Davis on the building setback lines was not by mistake; (5) even after Peters' written notice and the institution of the equity suit, Davis continued the construction of the dwelling. Judge EVANS concluded that Davis *intentionally* violated the restrictions and the zoning ordinance and that Peters was not guilty of laches or delay. The chancellor, after concluding that the violation of the zoning ordinance with respect to the northwest and southwest corners of the dwelling were inconsequential, did not require the removal of

these corners of the dwelling but did direct that Davis remove that portion of the dwelling which extended into the restricted area along Halley Avenue.

Exceptions filed to the chancellor's findings, conclusions of law and decree and the matter were heard before the court en banc. The majority of the court en banc accepted the chancellor's finding of fact that Davis did not encroach on the setback lines by mistake and that Peters was not guilty of laches but concluded that, under the language of the "Declaration", Peters had the right to *prevent* the encroachment before the encroachment took place, since Davis' encroachment had taken place prior to the institution of suit, Peters' sole remedy was the recovery of damages. The majority of the court en banc modified the decree of the chancellor to the extent that Davis was not required to remove any portion of the building and limited Peters' remedy to damages. The chancellor dissented, by opinion filed, to the decree of the majority of the court en banc. From that decree the instant appeal was taken.

Our determination of this matter must adhere to the well settled rule ". . . a chancellor's findings have the force and effect of a jury's verdict when affirmed by a court en banc and ordinarily will not be disturbed upon appeal; such findings will not be considered conclusive, however, when the record affords them inadequate evidentiary support or when they have been premised upon erroneous inferences and deductions drawn by the chancellor from the evidence. [citing an authority]": *Moyerman v. Glanzberg,* 391 Pa. 387, 391, 138 A. 2d 681 (1958).

The chancellor found, and the court en banc approved such finding that Davis' violation of the restrictions and zoning ordinance provisions was *not by mistake.* Such finding, although negatively expressed, affirmatively means that Davis *intentionally* committed

these violations. The instant record not only supports such finding but, beyond any question, portrays vividly defiance and disregard by Davis of both the zoning, ordinance and the restrictions compliance with which he had expressly covenanted. Davis was *fully aware* of that which was forbidden by the restrictions and zoning ordinances; nevertheless, after being notified of his transgressions, he continued the violations *even after this litigation was instituted*. On this record the court below properly concluded that Davis *intentionally* violated the restrictions and zoning ordinance.

If Davis' violation was *intentional* what was the remedy available to Peters?[4] Peters sought a court order to remove the offending portion of the dwelling from the restricted areas and to enjoin the building's completion within the restricted areas. The restrictions were aimed to preserve valuable property rights of air, light and lake view of Peters as an adjoining owner of land. Peters owned these property rights and' ". . . it makes no difference that the right may be insignificant [which Peters maintains is not a fact in this case] in value to them as compared with the advantages that would accrue to defendants from its violation. Even though greater injury may result from granting than refusing an injunction, a plaintiff is entitled thereto *if the defendant's act is tortious* [citing authorities]." (Emphasis added): *Kanefsky v. Dratch Construction Co.*, 376 Pa. 188, 196, 101 A. 2d 923 (1954). The same principle applies when the violation is *intentional*: *Ventresca v. Ventresca*, 182 Pa. Superior Ct. 248, 126 A. 2d 515 (1956); *Moyerman v. Glanzberg*, supra, p. 393. The instant violations were "in plain disregard" of the express words of the restric-

---

[4] It is well to note that the court en banc considered *only* the rights and remedies of the parties under the "Declaration" and not the township zoning ordinance.

tions. See: *Ratkovich v. Randell Homes, Inc.,* 403 Pa. 63, 68, 169 A. 2d 65 (1961).

Judge (now President Judge) Ervin, speaking for the Court in *Ventresca v. Ventresca,* supra (at p. 252), well stated: "Where a building restriction is still of substantial value to a dominant lot equity should restrain its wilful violation. [citing an authority]. To restrict the plaintiff to damages is not an adequate remedy. . . . Where a contract right has been invaded there is generally no question of the amount of damage but simply of the right. Clearly it would be 'only by conjecture and not by any accurate standard' that a jury could measure the damages caused to the plaintiff. [citing an authority]." Judge (later Chief Justice) Kephart in *Dodson v. Brown,* 70 Pa. Superior Ct. 359 (1918) aptly said: "The aggrieved property owner's right is absolute. However hard his acts might be regarded, he asks the court for the enforcement of a legal right of a positive character with respect to land which it is conceded was wrongfully taken from him. He is entitled to a decree. The rule in such case is founded on sound reason. If damages may be substituted for the land, it will amount to an open invitation to those so inclined to follow a similar course and thus secure valuable property rights. The amount of land involved does not change the situation. *Here is a wrongful invasion of a positive right to real property.*" (at p. 361). (Emphasis added). If a property owner, deliberately and intentionally violates a valid express restriction running with the land or intentionally "takes a chance", the appropriate remedy is a mandatory injunction to eradicate the violation. See: *Ventresca v. Ventresca,* supra, pp. 252, 253; *Moyerman v. Glanzberg,* supra, p. 393. Where one *deliberately* violates a building line restriction, injunctive relief requiring a modification of the building to comply with the restriction should not be denied on the theory that

the loss caused by it will be disproportionate to the good accomplished. See: 20 Am. Jur. 2d §§328, 329, 330, pp. 896-899, inc.

The rationale of the court en banc that Peters was entitled only to damages rather than the removal of the offending portions of Davis' dwelling from the restricted area because Peters should have prevented the completion of the building finds no support in the "Declaration", in our case law or in the factual posture herein presented.

Lastly, Davis claims that Peters is guilty of laches which should bar his claim. Both the chancellor and the court en banc found no evidence of laches and such finding is amply supported by the record.

While our decision is bottomed on the power and duty of equity to enforce a valid express restriction running with land against an intentional violation thereof, we note that Peters had standing, under the instant circumstances, in view of the "special and peculiar" injury to his property, to enforce the provisions of the zoning ordinance in equity. See: *Burne v. Kearney*, 424 Pa. 29, 32, 225 A. 2d 892 (1967).

In conclusion, we note that we fully agree with that which President Judge EVANS, the chancellor, said in his dissenting opinion: "Finally, we must conclude that if purchasers of land in a subdivision subject to restrictions can through speed or any other device create an immunity against anything but a suit for damages, restrictions through which all owners in a subdivision are benefited or limited will be rendered useless . . .".

Decree reversed and the matter remanded to the court below for reinstatement of the chancellor's original decree. Costs on Davis.