412 A.2d 625

Steven SEGAL and Dell Segal: Mark L. Kay and Joan S. Kay: Myrtle K. Dobbs, John C. Dobbs and Phyllis Dobbs; Leonard B. Edelstein and Lois J. Edelstein; Paul Sullivan and Julia Sullivan, Appellants,

v.

## SIM CORPORATION.

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Filed Oct. 19, 1979.

Petition for Allowance of Appeal Denied March 20, 1980.

Desmond J. McTighe, Norristown, for appellants.

Joseph S. Moloznik, Philadelphia, for appellee.

Before VAN der VOORT, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Appellants, a group of landowners in Montgomery County, Pennsylvania, instituted the instant equity action to enjoin the construction of multiple family structures by the Appellee, on its land in the Appellants' neighborhood. Hearings were held on January 18, 19 and 20, 1977 in the lower court. Thereafter, all parties filed detailed proposed findings of fact and conclusions of law. On July 27, 1977, the Chancellor issued an Adjudication and Decree Nisi, dismissing the Appellants' Complaint. Timely exceptions were filed and on December 19, 1977, after argument and upon consideration of briefs filed by counsel, the Court En Banc dismissed Appellants' exceptions and adopted the Chancellor's Decree Nisi as the final Decree. This appeal followed.

The Appellants and the Appellee derived title to their tracts of land from the same common ancestors in title. Over the course of several years between 1905 and 1907, by various deeds, landowners of the properties in issue in this case placed use restrictions on the land. Some restrictions were purportedly nullified by later restrictions, and then re-established by substantially similar later covenants. However, solely for the purposes of the resolution of this appeal it may be assumed that one or more of those restrictions still exists and is or are enforceable with respect to lands in the area which it or they apply. For purposes of this Opinion, it can be stated that the restrictions in question prohibit the use of particular areas of the land for any structure which is injurious to the character of a neighborhood of what were termed "high grade residences". Further, for purposes of this appeal, it may be assumed that the Appellants are the owners of substantial residences of the type which the said restrictions sought to protect.

The Chancellor held that restrictions in issue were vague, mischievous, burdensome and unenforceable as a matter of law. Moreover, the Chancellor held that the Appellants had entirely failed to prove their case especially since none of the restrictions could be held to be specifically applicable to Appellee's land. Since we agree with the latter holding of the lower court, we conclude on that basis alone that the final Decree of the lower court must be affirmed.

The record shows that the Chancellor, after conducting extensive hearings, prepared a comprehensive Adjudication. Each of the forty-one (41) findings of fact is well supported in the testimony and documents which make up the evidence of record. The Court En Banc in Montgomery County considered the Appellant's exceptions to the Adjudication, and dismissed them. It is firmly established in our law that the findings of fact by a chancellor, approved by a court en banc, have all the force and effect of a jury's verdict and will not be reversed on appeal unless a review of the record reveals that they are unsupported by the evidence or predicated upon erroneous inferences and deductions or errors of law. *Payne v. Kassab*, 468 Pa. 226, 361 A.2d 263

(1976); *Jacobson & Co. v. International Environmental Corp.*, 427 Pa. 439, 235 A.2d 612 (1967); *Peters v. Davis*, 426 Pa. 231, 231 A.2d 748 (1967). On the record before this Court, it is clear that the Chancellor had a clear basis to conclude that insufficient evidence was presented by Appellants in the hearings before him, and we can discern no erroneous inferences or deductions, nor errors of law in his conclusions, nor that of the Court En Banc in that regard. Thus, in a highly precise manner, the lower court painstakingly traced each of the intricate restrictions in issue, and correctly found each to be inapplicable to the specific land upon which Appellee has planned to build. Further, the Chancellor found the restrictions, as a group, to be inadequate to support Appellants' claims of reciprocal implied covenants showing a "community development". Moreover, the lower court found that Appellants had presented no evidence whatever at trial, as alleged in their Complaint, that the proposed development of the property by Appellee would unjustly enrich the Appellee, overcrowd the land, pollute the air, constitute any invasion of privacy, violate the Pennsylvania Constitution or the National Environmental Policy Act, constitute a nuisance or trespass, or violate Appellants' Civil Rights.

We have, for the purposes of this appeal, assumed that the covenants in question are legally valid enforceable restrictions on the use of the land to which they apply. We have made that assumption only because we find that the Chancellor was undoubtedly correct in his conclusion that the Appellants had completely failed to carry their burden of proof in the case. That assumption cannot be taken as an implication that we view as incorrect his finding that the restrictions in question were completely unenforceable under applicable law. It is simply unnecessary for us to resolve that issue in view of our finding regarding the sufficiency of proof offered by Appellants in the lower court.

It is worthy of mention that the Chancellor in this case presented a well-reasoned, highly articulate, and complete discussion of the facts and law applicable thereto in his Adjudication. His forty-one (41) findings of fact are clear,

and well supported in the evidence of record. He further set forth ten legally sound conclusions of law. The excellence of the work already performed by the Chancellor in this case not only buttresses what we believe are correct findings of fact and conclusions of law, but also has assisted us greatly in our review of this appeal. We find that the lack of sufficient evidence to support Appellants' case, standing alone, provides an independent basis mandating an affirmance of the lower court's Decree in this case.

Affirmed.

VAN der VOORT, J., files a dissenting opinion.

VAN der VOORT, Judge, dissenting:

I respectfully dissent to the refusal to enforce the restrictive covenants established by the plaintiffs in their deeds of record. The court below found as a fact that these covenants were properly created, but refused to enforce them, concluding that the covenants were vague, ambiguous and unenforceable, and that the plaintiffs therefore had not proved their case.

Plaintiffs own and occupy individual residences in a woodland area of Lower Merion Township and the Borough of West Conshohocken, in Montgomery County. They are attempting to restrain the defendant, a real estate development company, from constructing a high-rise apartment or condominium building on land which it acquired by deed in 1966, on the grounds that use restrictions contained in prior deeds in its chain of title preclude the construction of apartment or condominium buildings. The chancellor held that although the defendant's land was subject to restrictions, they were vague, mischievous, burdensome and unenforceable as a matter of law.

On October 9, 1905, a man by the name of Moro de Moro owned a sizeable tract of the land in question. He made an agreement with an adjoining large property owner, Joseph E. Griffith, whereby each covenanted for themselves, their heirs and assigns, among other things, that their lands should not be used for manufacturing business and any

offensive business or purpose that would be obnoxious to any neighborhood of high grade residences and country seats, and that no structure should be erected on their lands which would be injurious and offensive to such residential purposes.

By November 13, 1905, Clinton Gage had succeeded in title to the Moro tracts. He made a second agreement with Joseph E. Griffith which nullified the October 9, 1905 restrictions but reestablished substantially similar use restriction covenants upon the land.

On December 4, 1905, Gage and Griffith made another agreement (third agreement) which nullified the restrictions created in the agreement of November 13, 1905 and in their place established use restrictions as follows:

The parties hereto covenant and bind themselves and their heirs and assigns, respectively, each to the other, that they, or any of them, shall not at any time in the future use the Middle Road for ingress or egress to or from any manufacturing or mercantile establishment which shall be within the zone below mentioned, or to or from any place for the sale of intoxicating liquors which shall be within said zone, or to and from any structure or business which shall be within said zone, that is—or shall be injurious or obnoxious to a neighborhood of high grade residences and country seats. The said zone or territory being all that land which is within one thousand feet of any part of so much of the Middle Road as is now located entirely upon the lands of the parties of the second part hereto, that is to say as lies between a common corner of lands late of Moro de Moro, and Anthony J. Drexel and Mary Emily Griffith, respectively, and which common corner is a northwest corner of land late of said Drexel, and a certain other common corner of lands late of said three parties respectively and which latter corner is described as the point of ending of the Middle Road and of its junction within the Eastern Road, ingress and egress to and from private stables and the second parties stone quarry shall not be construed to be within the prohibition hereof.

It should be noted that the use restrictions changed character in this third agreement, i. e., the first agreement proscribed certain uses of the lands while this third agreement proscribed the use of Middle Road for ingress or egress to or from places using the land for certain named uses and purposes (substantially the same uses as were proscribed in the first and second agreements).

Before December 8, 1905, property owned by a party named Drexel passed to Henry S. Kerbaugh and wife. A fourth agreement was made on December 8, 1905 by and between the Gage, Griffith and Kerbaugh parties, which agreement granted to Kerbaugh parties a right of way in common in Western Road. This agreement also recited limitations and restrictions in the use of Western Road providing that the Kerbaughs their heirs and assigns,

shall not at any time use said Western Road for ingress to or egress from any manufacturing or mercantile establishment, or any place for the sale of intoxicating liquors, or any structure or business that will be injurious or obnoxious to a neighborhood of high grade residences and country seats, nor for any purpose that will be offensive to such a neighborhood.

On July 5, 1906, a fifth agreement was made between the Gages and George Thomas, et al., trustees. This was a right of way agreement and had in it no use restrictions similar to those appearing in the first four agreements.

By a deed dated February 1, 1907, the Gages conveyed to Samuel Smyth 700 acres of land, consisting of sixteen tracts of land which were essentially the lands which Gage had received from Moro. This deed contained the following provisions:

*The said Grantee* for himself and his heirs and assigns hereby covenant and agrees to and with the said grantors their respective heirs and assigns that the above described premises are taken under subject to and with notice of rights interests reservations and covenants as follows. *As respects* premises first to twelfth both inclusive above described to the rights easements uses claims estates and

interests conferred upon and granted and conveyed or intended to be granted and conveyed unto the above mentioned five agreements. (Exhibit P–4, page 171). *As respects* all of the above described premises to the various covenants and restrictions as set forth in the five agreements hereinbefore described (page 172).

Smyth is defendant-appellee Sim Corporation's predecessor in title. Its lands which it acquired through Smyth in the area concerned in this action are subject to certain restrictive covenants contained in the third and fourth agreements.

The first agreement created certain restrictions on the lands in question. The second agreement nullified the ones in the first agreement and provided its own restrictions. The third agreement nullified the restrictions in the second agreement and established its own restrictions limiting the use of Middle Road. The fourth agreement contained restrictions limiting the use of Western Road. The fifth agreement, as is stated hereinabove, contained no restrictions relevant to these proceedings.

The defendant intends to construct a highrise apartment or condominium building or other multiple dwellings on what is designated as Lot 25 as shown on Plaintiff's Exhibit P–9. The construction of that type of building or buildings would be injurious to a neighborhood of high grade residences and country seats. Not only would it be injurious, it would be destructive of such a neighborhood. However, the restrictions do not limit the type of structures that may be built, but limit the use of two streets for ingress and egress to certain types of structures or businesses on the land in question. The restrictive covenants affecting appellants' property do not prohibit the construction of any type of structure, but prohibit the use of Middle Road or Western Road for ingress and egress to and from certain structures or uses on said property.

The law looks with disfavor on restrictions upon the use of real property. *Mishkin v. Temple Bethel,* 429 Pa. 73, 77, 239

A.2d 800, 802 (1968). Nevertheless, one of the rights of ownership of real property is the right to impose reasonable restrictions upon the use of real property when it is conveyed or transferred. *Rieck v. Va. Manor Co.*, 251 Super. 59, 380 A.2d 375 (1977). Restrictions proscribing the use of certain local roads for ingress and egress to structures or uses located on the lands in a relatively small neighborhood are reasonable and should be enforced.

In my view, the decision of the court below that the land in question is subject to restrictions but that they are unenforceable should be reversed and the defendant be enjoined and restrained from using either Middle Road or Western Road for ingress or egress to any apartment or condominium building or other multiple dwelling structure located on Lot 25 as shown on Plaintiff's Exhibit P–9 in this proceeding.