**In re Delois GERST, Debtor.**

**Delois GERST, Plaintiff,**

v.

**WEST POPLAR APARTMENTS and Leslie Baskin, Trustee, Defendants.**

**Bankruptcy No. 89–10905S.
Adv. No. 89–0714S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 1, 1989.

Michael Donahue, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiff.

James W. Wilson, Philadelphia, Pa., for defendant/West Poplar Apartments.

Leslie Beth Baskin, Philadelphia, Pa., defendant/trustee.

ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. FINDINGS OF FACT

1. The bankruptcy case underlying this proceeding was commenced under Chapter 7 of the Bankruptcy Code on March 3, 1989, by the Debtor, DELOIS GERST (hereinafter "the Debtor").

2. On May 11, 1989, we appointed Cora Anderson, the Debtor's mother, as the Debtor's guardian ad litem, due to the allegation that the Debtor suffers from severe mental illness, requiring periodic hospitalization. *See In re Zawisza,* 73 B.R. 929, 932–34, 935–36 (Bankr.E.D.Pa.1987) (an incompetent person is entitled to file a bankruptcy petition and may do so by her guardian or "next friend").

3. On July 11, 1989, we approved a Stipulation between the Debtor and WEST POPLAR APARTMENTS, the landlord at her residence, 637 North 13th Street, Philadelphia, Pennsylvania (hereinafter referred to as "the Landlord"), by which the Landlord's motion for relief from the automatic stay, filed on April 17, 1989, was resolved. By the terms, *intera alia,* of that Stipulation, the Landlord agreed not to proceed to evict the Debtor as long as she did the following:

a. Refrains from unreasonably disturbing other tenants.

b. Cooperates with all rent reexaminations.

c. Refrains from damaging her rental unit, other than reasonable wear and tear.

d. Complies with the provisions of her lease agreement.

e. Accepts the first rental unit made available to her by the Philadelphia Housing Authority.

4. On August 3, 1989, the Debtor commenced the instant adversary proceeding against the Landlord and the interim Trustee, LESLIE BASKIN,[1] in which the Debtor requested that we order the Landlord,

whom she alleged was providing housing to her under some designated provision of Section 8 of the United States Housing Act, 42 U.S.C. § 1437f, to perform certain "necessary repairs" to her apartment unit; exempt any of her claims for damages against the Landlord from distribution to her creditors; and award her treble damages and reasonable attorneys' fees under the Pennsylvania Consumer Protection and Unfair Trade Practice Law, 73 P.S. § 209–9.2(a), against the Landlord in light of its alleged improper maintenance of her unit.

5. The specific repairs deemed necessary to the Debtor's unit, as set forth in a letter from the Debtor's counsel to the Landlord's counsel dated May 31, 1989 (hereinafter referred to as "the Letter"), were as follows:

a. Most of the glass has been broken out of the most of the windows. The windows also require screens.

b. The bannister between the first and second floor must be replaced.

c. The air conditioning does not work at all.

d. There have been no new carpets in the unit for over 11 years. They are worn out and should be replaced.

e. The refrigerator needs to be repaired. The interior shelves are broken.

f. The oven does not have shelves and the handles have broken off the stove.

g. The kitchen and bathroom cabinet should be repaired or replaced.

h. Several light fixtures are hanging from the ceiling.

i. The floors have buckled in place[s] and the doors are off their hinges in several places.

j. The front door bell does not work.

k. The bath tub and shower needs [sic] knobs.

l. The smoke detectors do not work.

m. The walls need to be repainted.

n. The kitchen floor should be retiled.

---

1. Ms. Baskin is obviously a nominal party added only to avoid any standing problems. *See Cain v. Hyatt,* 101 B.R. 440, 441–42 (E.D.Pa. 1989); and *In re Dinkins,* 79 B.R. 253, 258 (Bankr.E.D.Pa.1987). She has not participated in this proceeding in any manner.

o. The toilet seat should be replaced and the toilet itself is loose.

p. The thermostat is loose and does not function properly.

r. The closet shelves are broken and the closet doors are also broken.

6. After two continuances of the trial, by agreement of counsel, the proceeding was tried on October 17, 1989.

7. Counsel stipulated at the outset of the trial that all of the repairs cited in the Letter were legitimate and were in fact needed to the unit.

8. Ms. Anderson testified that her 53–year–old daughter, the Debtor, was indeed mentally ill, and was receiving Supplementary Social Security Income (hereinafter "SSI") as a result of her mental incapacity. The Debtor's illness was manifested by periods in which the Debtor becomes extremely verbally abusive, requiring hospitalization. Residing in the unit, in addition to the Debtor (when she was not hospitalized), were the Debtor's 21–year–old son, her 17–year–old daughter, and the daughter's (at that time) 8–day–old daughter. Ms. Anderson claimed that some of the damages in the unit had been caused in the course of three recent burglaries to the unit. However, although she was a nearby resident (in the same complex) and a daily visitor to the unit, Ms. Anderson provided no further detail as to the cause of the damages, and none of the residents of the unit testified to do so.

9. The only other witnesses at the trial were Dilma Garcia, the Landlord's manager since July 24, 1989, and Harry Moody, Ms. Garcia's predecessor during the period from July, 1988, to July, 1989. Mr. Moody indicated that he was aware of all or most of the conditions recited in the Letter since an annual inspection of the Debtor's unit had been performed in late 1988, but further stated that the Landlord had made only a few repairs to the unit, for the following reasons: (1) The Debtor had made no requests to the Landlord to make any other repairs; (2) He believed that most if not all of the damages were caused by the Debtor's own actions and execrable housekeeping; and (3) The Landlord

planned to evict the Debtor and her family and therefore did not desire to attempt to make any substantial repairs until they were removed. Ms. Garcia conceded that, ordinarily, the Landlord would perform all needed repairs requested by a tenant in any unit, and would thereafter bill the tenant for damages which it believed were attributable to the tenant, her family, or her guests. She agreed that, under its normal policy, the Landlord would have repaired items "c," "h," "k," "l," and "p" in the Letter, especially since those items did not appear to have been caused by the Debtor or her family. However, Ms. Garcia further stated that no repairs had in fact been made during her tenure as manager despite the legitimacy of the demands in the Letter because the Debtor had not been recertified for occupancy (an issue not further explained) and her "supervisors" (unnamed) had instructed her not to do so for reasons not further described.

10. At the close of the proceeding, the Debtor's counsel waived all claims except requests for injunctive relief to repair the conditions recited in the Letter.

11. The parties' Lease was not admitted into evidence by either party during the trial. The court, however, insisted that it be forwarded to the court for inclusion in the record on or before October 20, 1989, because it was believed by the court that the Lease might contain some recitation of the parties' duties and responsibilities and/or it might identify which federal statute and interpretative regulations applied to the unit. On October 23, 1989, we were supplied with a copy of the Lease.

12. The Lease appears to indicate that the Debtor has resided in her unit since September 18, 1981. It does not identify the particular federal program under which the Landlord operates her unit and we could not therefore ascertain same. It does include a long list of obligations of each party, including the following:

a. The Landlord:

The Lessor shall maintain the buildings and common areas and grounds of the project in a decent, safe and sanitary condition in conformity with the

requirements of local housing codes, applicable regulations of the Department of Housing and Urban Development, and the terms of the Lease. Lessor shall make all necessary repairs to the dwelling unit with reasonable promptness at its own cost and expense, except at [sic] otherwise provided in this Lease.

IF REPAIRS ON DEFECTS HAZARDOUS TO LIFE, HEALTH AND SAFETY are not made or temporary alternative accommodations to the Leasee within twenty-four (24) hours of Lessee's reporting same to Lessor, then Leasee's rent shall abate during the entire period of the existence of such defect while he is residing in the unrepaired dwelling, after so reporting such report was not given in writing in the manner now described. He shall give written notice to Lessor by personal delivery, at or mailed to the Lessor's office at _____. Rent shall not abate if the Lessee fails to give such notice or rejects reasonable alternative temporary accommodation.

The foregoing shall not apply to repairs or defects for which Lessee is responsible pursuant to this lease.[2]

b. The Debtor:

Lessee shall comply with all rules and regulations now established or hereafter duly adopted or modified by Lessor including, but not limited to, the requirements that Lessee:

.    .    .    .    .

F. Shall comply with all obligations upon Lessees by applicable provisions of building and housing codes materially affecting health and safety;

G. Shall keep the premises and such other areas as may be assigned to Lessee and Lessee's exclusive use in a clean, orderly and safe condition;

H. Shall report to the Management Office any breakage, damage, or need for repairs to the premises or equipment therein, and should promptly report any unsafe or unsanitary conditions in the common areas and grounds which may lead to damage or injury;

I. Shall dispose of all ashes, garbage, rubbish and other waste into appropriate containers in such manner as prescribed by Lessor and applicable local laws;

J. Shall use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air-conditioning and other facilities and appurtenances, including elevators, and shall not use any apparatus for heating not provided by Lessor, without the prior written consent of Lessor.

K. Shall refrain from, and cause Lessee's household and guests to refrain from destroying, defacing, damaging, or removing any part of the premises of project.

.    .    .    .    .

Q. Shall make no changes, repairs, or alternations to the premises and equipment and shall not use tacks, nails, screws or any fasteners in any part of the premises except in a manner approved by the Lessor.

.    .    .    .    .

T. Shall pay reasonable charges (other than for normal wear and tear) for all damages to the premises (including equipment supplied to the premises), and shall pay reasonable charges for damage to the project buildings, facilities or common areas negligently or intentionally caused by Lessee or Lessee's household or guests. Said charges are to be made according to the current Schedule of Maintenance Charges posted in the Management Office, and Lessee agrees that payment of all such charges shall become due and collectible the first day of the second month following the month the charges are billed.

U. Shall clean the premises and equipment supplied to the premises (including drapes) immediately prior to

---

2. Certain portions of the document supplied to the court were obliterated or cut off the page. We have done our best to supply the missing passages.

vacating and shall return the premises to Lessor in as clean and sanitary a condition as when Lessee took possession.... [3]

## B. CONCLUSIONS OF LAW

1. The parties apparently assumed, we believe correctly, *see* 28 U.S.C. § 1334(b), that this court has jurisdiction to hear this proceeding. They also both expressly consented, by their respective counsel, that we could determine it. *See* 28 U.S.C. § 157(c)(2).

2. Pennsylvania law, which controls this controversy,[4] provides that a non-waivable implied warranty of habitability attaches to every residential realty lease pertinent to realty situated in the Commonwealth. *Pugh v. Holmes,* 486 Pa. 272, 285–88, 405 A.2d 897, 905–07 (1979); and *Fair v. Negley,* 257 Pa.Super. 50, 55–60, 390 A.2d 240, 243–45 (1978). With respect to the remedy which the Debtor seeks here, *i.e.,* a mandatory injunction requesting the Landlord to specifically perform its duties pursuant to the implied warranty of habitability, *Pugh,* states as follows, 486 Pa. at 295, 405 A.2d at 908:

> Finally, since the lease is a contract, other traditional contract remedies such as specific performance are available to enforce the implied warranty of habitability. *Javins [v. First National Realty Corp.,* 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970) ],* 138 U.S.App. D.C. at 380, at 428 F.2d 108, n. 61; *see* Uniform Residential Landlord and Tenant Act § 4.101(b) (1972) and Blumberg and Robbins, Beyond URLTA: A Program for Achieving Real Tenant Goals, 22 Harv.Civ.Rts.—Civ.Lib.L.Rev. 1 (1976). As with other contracts, however, specific performance is an equitable remedy not available as a matter of course but only in unique situations. 11

S. Williston, Contracts § 1418A (3d ed. 1968); Murray, [*On Contracts—A Revision of Grismore on Contracts,* (1974)], at § 220.

3. Injunctive relief is generally allowable only if the plaintiff's right to relief is clear and the plaintiff will suffer irreparable harm if the injunctive relief sought is not granted. *See, e.g., Robinson v. City of Philadelphia,* 400 Pa. 80, 89, 161 A.2d 1, 6 (1960); *McDonald v. Noga,* 393 Pa. 309, 312–13, 141 A.2d 842, 844 (1958); and *Williams v. Bridy,* 391 Pa. 1, 10, 136 A.2d 832, 837–38 (1957). *Cf. Grant v. Cohen,* 630 F.Supp. 513, 520 (E.D.Pa.1985).

4. A mandatory injunction of specific performance can be entered only when the plaintiff's right to relief is especially clear and no other relief would be adequate. *See, e.g., Roberts v. Board of Directors of School Dist. of Scranton,* 462 Pa. 464, 469–70, 341 A.2d 475, 478 (1975); *Peters v. Davis,* 426 Pa. 231, 235–39, 231 A.2d 748, 751–53 (1967); *Cimina v. Bronich,* 349 Pa. Super. 399, 405, 503 A.2d 427, 430 (1985); and *County of Allegheny v. Commonwealth,* 85 Pa.Cmwlth. 73, 79, 480 A.2d 1330, 1333 (1984).

5. Given these principles of Pennsylvania law and the provisions of the parties' Lease, which we believe validly allocates responsibility for repairs of unit damages which are not in themselves essential to habitability between the parties, we conclude that a mandatory injunction to compel the Landlord to make repairs should be entered only as to those repairs which (a) The Landlord concedes it should make and is therefore intentionally and deliberately refusing to make despite the Debtor's acknowledged rights thereto. *See Peters, supra,* 426 Pa. at 235–38, 231 A.2d at 751–52. These would include items "c," "h," "k," "l," and "p" recited in the Letter, which Ms. Garcia conceded should have been done pursuant to the Landlord's normal policy;

---

**3.** Unfortunately, the Lease fails to identify under what Section 8 housing program the Landlord is operating the Debtor's unit. Our review of the possibly pertinent federal Regulations, *e.g.,* 24 C.F.R. §§ 880.601, 880.607 (new construction); 881.601, 881.697 (rehabilitated construction); 886.318, 886.323 (special alloca-

tions), reveals that the Lease and the pertinent Pennsylvania state law are far more precise and hence are controlling in allocating the parties' duties and responsibilities.

**4.** *See* page 433 n. 3 *supra.*

or (b) Are sufficiently serious to the unit residents' health and safety as to substantially contribute to breach of the implied warranty of habitability. It appears that, over and above the foregoing five items, items "a," "i," and "o" cited in the Letter fall within this category.

6. The Landlord shall be directed to make only those repairs reflected in items "a," "c," "h," "i," "k," "l," "o," and "p," within a reasonable time. Since the repairs appear to be less than monumental, we find a 17–day period to make such repairs to be sufficient.[5]

## C. ORDER

AND NOW, this 1st day of November, 1989, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff, DELOIS GERST, and against the Defendant, WEST POPLAR APARTMENTS, in part.

2. The said Defendant is directed to perform all of the following repairs to the premises of the Debtor on or before November 17, 1989:

    a. Replace all glass that has been broken out of the windows.

    b. Render the air conditioning workable.

    c. Repair or replace all light fixtures.

    d. Repair all floors and doors.

    e. Render necessary smoke detectors workable.

    f. Replace the toilet set and fasten the toilet securely.

    g. Repair the thermostat and render it functional.

3. All other relief sought by the Debtor herein is DENIED.

---

**5.** In rendering this Order, we make no determination regarding the rights of the Landlord to charge the Debtor for these repairs. We also express no opinion as to whether the Landlord may proceed to provide notice to the Debtor that she has violated the terms of the Stipulation approved by us on July 11, 1989, *see* Finding of Fact 3, page 430 *supra*, and whether therefore it may attempt to proceed to evict her.