**In re Marilyn M. MOSS, Debtor.**

**Bankruptcy No. 98–43272.**

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

Sept. 28, 1999.

Marilyn M. Moss, pro se.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

This matter comes before the Court on the Motion for Appointment of Guardian ad Litem or Next Friend of Debtor filed by the Trustee, Steven C. Block, on August 17, 1999.

Marilyn M. Moss ("Debtor" or "Moss") filed for protection under Chapter 7 of the Bankruptcy Code on August 6, 1998. From its inception, this case has been marked by bizarre occurrences and complicated by the Debtor's unusual behavior. Shortly after her *pro se* bankruptcy petition was filed, declarations were filed (presumably by Moss) with the Court stating that she was extremely ill and could not attend her § 341 meeting in person. Approximately two months later, pleadings were filed (presumably by Moss) that represented that she had died on November 15, 1998. The filing of these pleadings, which have been found to be false, led to Moss' indictment by a grand jury on two counts of bankruptcy fraud.[1] She was arrested and taken into custody on March 2, 1999, and has been incarcerated since that time. On July 21, 1999, the District Court for the Western District of Missouri declared her unfit to assist in her criminal defense and ordered her to undergo treatment at a mental health facility. Moss is currently undergoing treatment at Federal Medical Center Carswell, located in Ft. Worth, Texas.

In addition to the District Court's determination that she is unable to assist in her defense in the criminal proceedings, Moss has demonstrated, through her various correspondences with the Court and her conduct at the August 17 and September 2 hearings, her inability to competently participate in her bankruptcy case. There-

fore, in order to adequately protect the rights of the Debtor, facilitate the expeditious administration of the bankruptcy estate, and preserve the integrity of the bankruptcy court and bankruptcy process, the Court will grant the Trustee's Motion and appoint a guardian for the Debtor. The guardian will be appointed for the limited purpose of handling matters related to the bankruptcy case and the guardianship will terminate upon a showing that the Debtor is capable of competently participating in her bankruptcy case.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052. The factual background relevant to this Memorandum Opinion and Order will be developed in the Discussion section as necessary.

## DISCUSSION

This case presents an issue of first impression to the Court. In fact, the issue of whether a guardian ad litem may be appointed by a bankruptcy court during the pendency of a case, for its general administration (as opposed to the appointment of a guardian for adversarial proceedings pursuant to Rule 7017, Fed.R.Bankr.P.), appears to be novel to the whole of bankruptcy law. The case law dealing with the issues of incompetency and the appointment of guardians ad litem in the bankruptcy context is notable for its absence. Quite simply, it is an issue that doesn't come up often. The Court has uncovered only one case in which a guardian ad litem was appointed by a bankruptcy court during the pendency of a case for its general administration—*Gerst v. West Poplar Apartments (In re Gerst)*, 106 B.R. 429 (Bankr.E.D.Pa.1989). Unfortunately, the court in *Gerst* did not provide any significant explanation or rationale in support of

---

1. Moss has been indicted on two counts of making false declarations to the bankruptcy court, in violation of 18 U.S.C. § 152(3).

its appointment of a guardian; it merely noted in the factual recitation of the case that the court had appointed a guardian and cited *In re Zawisza*, 73 B.R. 929 (Bankr.E.D.Pa.1987), a case in which it was held that a previously appointed guardian ad litem could *file* bankruptcy for an incompetent or minor. *Gerst*, 106 B.R. at 430. As we discuss below, the analysis in *Zawisza* and its progeny does provide some direction to the issue presently before the Court; however, our starting point must be consideration of Rule 1016 and the Debtor's competency to adequately and properly participate in these bankruptcy proceedings.

Federal Rule of Bankruptcy Procedure 1016 provides, in pertinent part:

Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded *in the same manner, so far as possible,* as though the death or incompetency had not occurred.

Fed.R.Bankr.P. 1016 (emphasis added).

In the context of this case, this rule raises two issues that the Court must address: 1) what is meant by "incompetency" as it applies to these bankruptcy proceedings; and 2) what is meant by "in the same manner, so far as possible," in Rule 1016. We deal with these issues in order.

## 1. INCOMPETENCY

■ Incompetency, in the sense of mental competency, is not mentioned or defined in the Bankruptcy Code.[2] The only relevant references to incompetency are in the Federal Rules of Bankruptcy Procedure—Rules 1016 and 7017. Rule 1016 deals with the administration of a bankruptcy case in the event of a debtor's death or incompetency, and Rule 7017 deals with the appointment of a guardian ad litem for adversary proceedings in the event the debtor is a minor or an incompe-

tent. Neither rule, however, provides or indicates what definition of incompetency should be used. The case law surrounding the application of Rule 1016 (of which there is very little) is unavailing, but one court applying Rule 7017 has indicated that determinations of incompetency should be made by reference to state law. *Moody v. Smith (In re Moody)*, 105 B.R. 368, 371 (S.D.Tex.1989). Because there is no federal law dealing with the determination of mental incompetency in the sense of management of an individual's personal and business affairs (as under state guardianship statutes), and since this has traditionally been an area left to the various state laws, the Court believes that it would be appropriate to look to the laws of the State of Missouri, the state of the Debtor's present domicile, for guidance in this matter.

In Missouri, the definition of incompetency and the procedures for the appointment of a guardian ad litem are governed by Missouri Revised Statutes § 475.010, et seq. Generally speaking, the requirements and procedures for the appointment of a guardian ad litem are quite stringent, and understandably so; the appointment of a guardian may entail a serious deprivation of personal liberty and, to some extent, stigmatizes the allegedly incompetent person in the eyes of the community. Fortunately, Missouri law provides an option that is a significantly less drastic infringement of personal liberty, and happens to be all that is necessary under the present circumstances. That option is the appointment of a "limited guardian," which is controlled by § 475.080:

*Appointment of limited guardian or conservator.* If the court, after hearing, finds that a person is partially incapacitated, the court shall appoint a limited guardian of the person of the ward. The order of appointment shall specify the powers and duties of the limited

---

**2.** The term "incompetence" does appear three times in the Code, but it is used to refer to practical abilities (as in a debtor-in-posses-

sion's ability to manage a business) and not mental competency. *See* 11 U.S.C. §§ 1104, 1106 and 1204.

**540**

guardian so as to permit the partially incapacitated ward to care for himself commensurate with his ability to do so and shall also specify the legal disabilities to which the ward is subject. In establishing a limited guardianship, the court shall impose only such legal disabilities and restraints on personal liberty as are necessary to promote and protect the well-being of the individual and shall design the guardianship so as to encourage the development of maximum self-reliance and independence in the individual.

Mo.Rev.Stat. § 475.080.[3]

The appointment of a limited guardian for the Debtor in this case will comport with the dictates of § 475.080: This Order specifies the powers and duties of the limited guardian, specifies the legal disabilities to which the Debtor is subject, and the hearing requirement has already been met. The Court held a hearing on September 2, 1999, at which the Debtor appeared by telephone, to determine whether she presently has the ability to competently assist in her bankruptcy case.[4] The Court determined then that she does not. This conclusion was based primarily on a consideration of three things: a) the District Court's determination that Moss is presently incompetent to assist in her criminal defense; b) Moss' irrational behavior; and c) Moss' apparent inability to comprehend the administration of her bankruptcy case.

**a. The District Court's Determination of Incompetency**

On July 21, 1999, Judge Gary A. Fenner of the District Court for the Western District of Missouri held a hearing pursuant to a Motion for a Judicial Determination of Defendant's Mental Competency (filed by Moss pursuant to 18 U.S.C. §§ 4241(a) and (b)) and a Motion for Hearing and Commitment filed by the United States pursuant to 18 U.S.C. § 4241(d).[5]

---

**3.** *See also, Ritter v. Walker (In the Matter of Walker),* 875 S.W.2d 147 (Mo.Ct.App.1994) (applying § 465.080).

**4.** Although questions were raised at the hearing as to how a guardian for Moss might be compensated, and although counsel for the U.S. Trustee subsequently advised the Court that the U.S. Trustee intended to file written objections to the Motion for Appointment, no one has filed objections to the Motion and no one has made oral objections to it.

**5.** 18 U.S.C. § 4241 provides:

(a) Motion to determine competency of defendant.—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(b) Psychiatric or psychological examination and report.—Prior to the date of the hearing, the court may order that a psychiat-

ric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

(c) Hearing.—The hearing shall be conducted pursuant to the provisions of section 4247(d).

(d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

The District Court, basing its decision on a report by Dr. James Shadduck, Forensic Psychologist,[6] found that "[t]he defendant, Marilyn M. Moss, is presently suffering from a mental disease or defect rendering her unable to understand the nature and consequences of the criminal proceedings against her and unable to assist properly in her defense," and the court ordered that she be "committed to the custody of the Attorney General for hospitalization and treatment."

While the Court has not had the benefit of Dr. Shadduck's report, the Court is confident in its reliance on the ruling of the District Court, particularly in view of the fact that Moss and her attorney stipulated to the District Court's consideration of the report and have not contested the District Court's determination that Moss is presently suffering from a mental disease or defect which renders her incapable of understanding the criminal proceedings filed against her and assisting in her defense. This Court is likewise convinced that Moss does not properly understand the bankruptcy proceedings in which she is involved, both as debtor and as defendant.

#### b. Irrational Behavior

The first instances of Moss' irrational behavior also lie at the root of the pending criminal charges. And although it has not been determined that she was suffering from a mental illness at the time she allegedly made the false representations to the bankruptcy court, this conduct nonetheless warrants some consideration here.

Moss filed a Chapter 7 bankruptcy petition, *pro se*, on August 6, 1998, apparently for the purpose of halting the efforts of two California law firms to collect a $750,-000.00 civil judgment against her and to set aside some purportedly fraudulent transfers of real property. Shortly after the Debtor filed bankruptcy, she represented to the Court, in a "declaration," that she was suffering from the advanced stages of multiple sclerosis and, as a result, could not use her legs, control her bladder, speak, or travel. She also submitted a declaration by a Dr. Joseph Lindsay that purported to substantiate her claims of disability. It has since become apparent that these claims were false and the "doctor's" declaration was a forgery.

Then, on November 23, 1998, a pleading entitled "Notification of Death of Debtor Marilyn Moss" was submitted to the Court. The "Notification," signed by "Jonathan Lindstrom, Administrator," stated that Moss had been rushed to a hospital on November 15 and had died of a brain aneurysm in the emergency room. It further stated that "the few assets left in the estate must be used to pay for Marilyn Moss (sic) coffin and tombstone." Needless to say, these notifications were false; Moss is still very much alive.[7]

The other instances of the Debtor's irrational behavior which the Court considers here are found in three letters which the Court has received from the Debtor. In each one of these, the Debtor proclaims that she is not Marilyn Moss and that she is only using this name under protest. She also maintains that she never filed the bankruptcy at all; that the Trustee is, among other things, lying, harassing her family and friends, and trying to steal her money; and that she is being tortured in jail. She also stated in court on August 17 that she was being "framed."

---

(B) the pending charges against him are disposed of according to law; whichever is earlier.
If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the trial to proceed, the defendant is subject to the provisions of section 4246.

6. The District Court's Order indicated that all of the parties stipulated to the court's consideration of the report. The psychologist's report has not been offered into evidence in these proceedings.

7. As Mark Twain might have said, "the rumors of her death were greatly exaggerated."

The Court does not purport to have psychiatric expertise; however, the Court can appreciate the fact that the Debtor is acting irrationally, in a way that prevents the bankruptcy case from proceeding efficiently, and in a way that will likely prevent her from protecting her own rights throughout the administration of her bankruptcy case.

### c. The Debtor's Failure to Comprehend Implications of Filing Bankruptcy

■ The Court does not expect a *pro se* debtor to have a complete, or even informed, understanding of the Bankruptcy Code, nor do we expect a debtor to agree with all of the actions taken by the Court or Trustee. However, a rudimentary understanding of the bankruptcy process, or at least the absence of irrational, contrary conceptions, is necessary to make progress in the administration of the Debtor's bankruptcy estate. The Debtor has not displayed this understanding; rather, Moss' behavior in this case shows her to be confused and even paranoid in respect to the administration of her bankruptcy case. She misunderstands the role of the Trustee; she doesn't understand that the case won't be dismissed just because she wants it to be; and she doesn't appear to understand that the bankruptcy estate may encompass assets that have been transferred to others.

Additionally, because of Moss' incarceration and the uncertainty as to her competency, the Trustee (and the Court) have been unable to proceed with two adversary proceedings that were filed months ago (on April 23, 1999 and on April 28, 1999) and that would, in the normal course of events, have been completed by now. In short, Moss' obvious incompetency has impeded the prompt and efficient administration of this bankruptcy estate, and will continue to do so unless the Court takes steps to remedy the present situation.

Based on the foregoing, the Court concludes that for purposes of Rule 1016, Marilyn Moss is mentally incapable of aiding in or proceeding with the administration of the bankruptcy estate and her bankruptcy case, including the adversary proceedings filed against her.

### 2. "IN THE SAME MANNER, SO FAR AS POSSIBLE"

■ It is clear that the language, "the estate shall be administered ... in the same manner, so far as possible, as if the death or incompetency had not occurred," contemplates that a bankruptcy court may need to take extraordinary steps in order to administer the estate of a debtor who has died or is incompetent. A contrary reading would render the language "so far as possible" superfluous, and the statute would simply require that the case proceed as normal, without making allowances for the unique issues that would undoubtedly arise if a debtor died or became incompetent. Therefore, the only questions the Court must address are whether it would be possible to proceed in the same manner as if the incompetency had not occurred, and if not, whether the appointment of a limited guardian would be an appropriate measure.

In this case, the Court does not believe that the estate can be administered as usual. While it might be *technically* possible to proceed with the case if a limited guardian is not appointed at this time, *practically* it would be extremely difficult, and it would be impossible to proceed with the case in a manner that would adequately protect the Debtor's rights.

It is not uncommon to have an uncooperative debtor, nor is it uncommon to have an uncooperative debtor proceeding without an attorney, as is Marilyn Moss.[8] But there are two aspects to this case that

---

**8.** Moss has been unable to obtain counsel and there does not appear to be any likelihood that she will be able to in the foreseeable future. If she were able to obtain counsel, the Court would be willing to reassess the necessity of a limited guardian at that time.

distinguish it from the usual case with an uncooperative debtor. First of all, the Debtor's failure to cooperate can be attributed more to her current mental state than a disregard for the Court. An uncooperative debtor might do things such as evade service or not appear for hearings, but it is unlikely that someone without mental difficulties would go to the extremes Moss has, i.e. deny her own identity, deny that she even filed bankruptcy at all, or attempt to fake her own death.

Second, the Debtor's mental illness will likely prevent her from taking the actions necessary to avail herself of the benefits of the bankruptcy process and to protect her rights in adversary proceedings. In this sense, it would be impossible to proceed with the case as usual. If Moss' mind is occupied with her illness, she will not be able to focus on and devote her efforts to the administration of her bankruptcy case. If a limited guardian is appointed, however, her rights would be adequately protected and she would be more likely to receive the various protections provided a debtor in the Bankruptcy Code and by the bankruptcy court. This would be especially true with a limited guardian who is familiar with bankruptcy law, and the Court has made that one of the criteria in its selection of a limited guardian for Moss.

Finally, the Court finds that the appointment of a limited guardian is necessary to conserve judicial resources and facilitate judicial economy. There are already two adversary proceedings pending against the Debtor, and as the Trustee indicated at the September 2 hearing, more adversary proceedings against the Debtor are in the works. Pursuant to Rule 7017, if the Court determined that the Debtor was incompetent (which it has), a guardian ad litem or next friend would need to be appointed to handle each of those adversary proceedings for the Debtor. By appointing a "permanent" limited guardian, it saves the trouble and expense of appointing a guardian each time an adversary proceeding is filed and thereby facilitates

the expeditious administration of the estate, in addition to the other benefits of appointing a limited guardian discussed above.

Having determined that it would be impossible to administer the case in the same manner as if the Debtor was competent and that the best course of action at this point in the case would be to appoint a limited guardian as outlined in Mo.Rev. Stat. § 475.080, we now turn to a consideration of the source of our authority to appoint a limited guardian.

The Bankruptcy Code does not specifically provide for the appointment of a guardian ad litem or, as is the case here, a limited guardian, for the general administration of a case, so we turn to the equitable powers accorded the bankruptcy court pursuant to 11 U.S.C. § 105. We also take direction from the liberal manner in which Rule 7017 has been interpreted as authorizing a guardian ad litem to file bankruptcy for a minor or incompetent.

Section 105 provides, in pertinent part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Since we have already determined that the appointment of a limited guardian is necessary and appropriate, our only inquiry here is whether the appointment of a limited guardian is necessary or appropriate *to carry out the provisions of this title.* The Court finds the appointment necessary and appropriate to carry out the provisions of this title because it will aid in the administration of the case, advance the goals of the Bankruptcy Code and process, and most importantly, follows directly

from the way in which Rule 7017 has been interpreted and applied. *See* 2 COLLIER ON BANKRUPTCY ¶ 105.01[1] at 105–6 (15th ed. rev.1999) ("The statutory language thus suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective.").

As discussed above, Rule 7017 provides for the appointment of a guardian ad litem or next friend for adversary proceedings.

> If an infant or incompetent person does not have a duly appointed representative he may sue by a next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

FED.R.BANKR.P. 7017.

Nothing in the text of Rule 7017, however, indicates that it is applicable to the general administration of a case or that it authorizes a guardian ad litem or next friend to file a bankruptcy petition for a minor or incompetent. Notwithstanding, a number of courts have found, without criticism, Rule 7017 to authorize the filing of a bankruptcy petition by a previously appointed guardian ad litem. *See e.g., In re Murray,* 199 B.R. 165 (Bankr.M.D.Tenn.1996); *Brown v. Financial Enterprises Corp. (In re Hall),* 188 B.R. 476, 483 (Bankr.D.Mass. 1995); *In re Kjellsen,* 155 B.R. 1013, 1018–20 (Bankr.D.S.D.1993) *overruled on different grounds by Wieczorek v. Woldt (In re Kjellsen),* 53 F.3d 944 (8th Cir.1995); *In re Zawisza,* 73 B.R. 929 (Bankr.E.D.Pa.1987) (hereinafter *"Zawisza"*).

*Zawisza* was the first case in which a court held that a guardian or next friend may file a bankruptcy petition for an incompetent. The court in *Zawisza* based its holding on a liberal interpretation and application of Fed.R.Civ.P. 17(c) (applicable to bankruptcy proceedings through Fed.R.Bankr.P. 7017). The court reasoned:

> Since the next friend may file every other type of federal action pursuant to F.R.Civ.P. 17, there is simply no reason to preclude a next friend from filing a bankruptcy petition and several reasons support the allowance of such an action.
>
>   *    *    *    *    *    *
>
> *This Court believes that the underlying purpose of F.R.Civ.P. 17(c) is to permit someone, the next friend of an incompetent, to act expeditiously, particularly where a guardian has not been appointed, in order to protect the interests of the incompetent.* That purpose is served in the case *sub judice,* where the Debtor's interests could be prejudiced if a bankruptcy petition could not be filed except by a duly-appointed guardian, as the appointment of a guardian is a process which could take some time, especially since no such proceeding has transpired to date. The activities precipitated by the filing of any federal law suit rarely await the possibly ponderous process of the appointment of guardian. This is particularly true of this case, as in many bankruptcies, where timing is apparently significant.

*Zawisza,* 73 B.R. at 935–36 (emphasis added). *See also, In re Murray,* 199 B.R. 165 (Bankr.M.D.Tenn.1996).[9]

---

**9.** In *In re Murray,* the court cited Rule 9029, Fed.R.Bankr.P., in addition to the rationale provided by *Zawisza,* in support its application of Rule 17(c) to the filing context. The court commented:

> The Advisory Committee Note to the 1995 version of Federal Rules of Bankruptcy Procedure 9029(b) states: 'The rule provides flexibility to the court in regulating practice when there is no controlling law.' Specifi-

cally, it permits the court to regulate practice in any manner consistent with federal law, with rules adopted under 28 U.S.C. § 2075, with Official Forms, and within the district's local rules.... Pursuant to Fed. R.Bankr.P. 9029(b) it is appropriate to apply Rule 17 of the Civil Rules to determine capacity to file a Chapter 13 petition.

*In re Murray,* 199 B.R. at 172.

The interpretation of Fed.R.Civ.P. 17(c) set forth in *Zawisza* is directly applicable to the instant case inasmuch as our primary goal in the appointment of a limited guardian for the Debtor, Marilyn Moss, is to protect her interests. And while the court in *Zawisza* only spoke to the question of whether a guardian could file bankruptcy for an incompetent, allowing a guardian to file bankruptcy for an incompetent necessarily implies that the guardian will be responsible for the debtor throughout the administration of the case, as the limited guardian for Moss will be. Note that we do not rely on Rule 7017 for the authority to appoint a limited guardian; that authority is found in § 105. Rule 7017 merely provides the statutory anchor for our use of § 105 to appoint a limited guardian for the Debtor.

Finally, the Court would emphasize that we have not made and are not attempting to make a finding of general incompetence as might be made by a state court in a guardianship proceeding under the state statutes. Our finding is narrowly limited to this case and the Debtor's bankruptcy proceedings, and for the purposes stated herein. It is hoped that the Debtor will recover her mental competence as a result of the treatment she receives at the Federal Medical Center in Texas. If she does, this Court will be more than willing to terminate the limited guardianship.

For the foregoing reasons, it is

**ORDERED** that the Trustee's Motion for Appointment of Guardian ad Litem or Next Friend be and is hereby GRANTED. It is

**FURTHER ORDERED** that Patricia E. Hamilton, of the law firm Morrison & Hecker, L.L.P., be and is hereby appointed as the limited guardian of the Debtor,

Marilyn M. Moss, for the limited purposes as set out in this Memorandum Opinion and Order, to serve until such time as there is a showing that Marilyn M. Moss is capable of competently participating in her bankruptcy case. This appointment shall be effective immediately after the period of appeal (as prescribed in Rule 8001, et seq.) has expired.

**SO ORDERED.**

---

The use of Rule 9029 was proper in *In re Murray* because a guardian had already been appointed and it was merely a procedural matter as to who could file the bankruptcy. In the present case, however, Rule 9029 would not be directly applicable because the matter is not procedural; a guardian has not yet been appointed by a state court and the appointment of a guardian by the bankruptcy court implicates its authority to alter the substantive rights of the Debtor. Nevertheless, *In re Murray*'s application of Rule 9029 does provide collateral support of the Court's conclusions.