Angel P. SAN MIGUEL SANDOVAL,
Debtor.

Hector Devila Vicenty, on behalf of
Hector Davila Torres, and Neriana
Vicenty Cardona, Appellants,

v.

Angel F. San Miguel Sandoval,
and Alejandro Oliveras Rivera,
Chapter 13 Trustee, Appellees.

BAP No. PR 04–026.
Bankruptcy No. 00–06747–ESL.
Adversary No. 01–0074.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 16, 2005.

Isabel M. Fullana, Hato Rey, PR, on brief for Appellants.

Luis A. Medina Torres, San Juan, PR, on brief for Appellee.

Before FEENEY, BOROFF, and KORNREICH, United States Bankruptcy Appellate Panel Judges.

PER CURIAM.

This appeal is from an order of the United States Bankruptcy Court for the District of Puerto Rico (the "bankruptcy court") entered in Angel F. San Miguel Sandoval's (the "Debtor") chapter 13 bankruptcy case on April 19, 2004. In that order, the bankruptcy court denied a motion to reconsider filed by creditors Hector Davila Torres and Neriana Vicenty Cardona, husband and wife, and their conjugal partnership [1] (collectively, the "Creditors"; individually, "Davila Torres" or "Vicenty Cardona"). The Creditors moved for reconsideration and relief from the bankruptcy court's January 7, 2003 order in which the court (1) denied the Creditors' motion to allow the late filing of their proof of claim and sustained the Debtor's objection to the Creditors' claim, and (2) denied the Creditors' motion to dismiss the Debtor's chapter 13 case.

This appeal raises several issues, including the due process rights of debtors and creditors in cases proceeding under chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code" or "Code"). Specifically, the issues are:

1) Whether the Creditors' claim is time-barred, notwithstanding that notices in the case were not sent directly to the Creditors, but to the Creditors' pre-bankruptcy attorney;

2) Whether a confirmed plan binds creditors even if the debtor was ineli-

---

1. Under Puerto Rican law, the act of marriage creates a "conjugal partnership," 31 P.R. Laws Ann. § 3662 (2002), which is considered an entity separate from the individual spouses. *Fernandez–Cerra v. Comm. Ins. Co. of Newark*, 344 F.Supp. 314, 316 (D.P.R. 1972). The conjugal partnership may sue and may be sued, may be held liable for certain debts and obligations and holds, as community property, most property acquired by either spouse during the marriage. *Id.; see also* 31 P.R. Laws Ann. §§ 284 and 3622–3701.

gible for chapter 13 relief pursuant to § 109(e) of the Bankruptcy Code;

3) Whether the Creditors should be granted an extension of time for filing their claim based on the doctrine of "excusable neglect;" and

4) Whether the Creditors should be granted an extension of time for filing their claim if one of the parties was legally incompetent during some or all of the applicable period for filing claims.

For the reasons stated below, the bankruptcy court's denial of the motion to dismiss is AFFIRMED. The order denying the motion to allow late filing of the Creditors' proof of claim is VACATED and RE-MANDED for further proceedings.

## I. *FACTS AND PROCEDURAL HISTORY*

In November of 1998, the Creditors obtained a judgment in the sum of $125,000 from the Court of First Instance, Arecibo Superior Section (the "Arecibo Superior Court") against the Debtor and his spouse, Gloria Montes Cardona, and their conjugal partnership. The Arecibo Superior Court awarded the Creditors interest on their judgment at the rate of ten (10) percent per annum from September 30, 1998, as well as legal fees in the sum of $1,500. The Puerto Rico Court of Appeals affirmed the judgment on February 25, 2000, shortly before the filing of the instant bankruptcy case. Attorney Jose Davison Lampon ("Davison Lampon") of Bayamon, Puerto Rico, represented Davila Torres and Vicenty Cardona in the Arecibo Superior Court action and on appeal.

On June 9, 2000, the Debtor and his wife filed a chapter 13 petition in the bankruptcy court.[2] On Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtor listed, as his only unsecured debt, a claim of $275,000 resulting from a "personal loan." He did not describe the claim as disputed, contingent or unliquidated. The creditor holding that claim was listed there as: "HECTOR Davila Torres, c/o Lcdo. Jose Davison Lampon, P.O. Box 2178, Bayomon, Puerto Rico 00960–2178." The address actually belonged to Attorney Davison Lampon's law office. The Debtor listed Davila Torres in the same manner on the list of creditor names and addresses (the "Master Address List") required by Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules") 1007 and Local Bankruptcy Rule 2002 of the United States Bankruptcy Court for the District of Puerto Rico ("PRLBR"). Vicenty Cardona was not listed on either the Debtor's bankruptcy schedules or the Master Address List.

On June 9, 2000, the Clerk of the bankruptcy court (the "Clerk") mailed a "Notice of Filing a Petition in Bankruptcy Under Chapter 13 and of Automatic Stay of Suits" (the "Notice of Filing"), using the names and addresses as they appeared on the Master Address List.[3] On June 16, 2000, the Clerk issued, but did not serve by mail or otherwise, an "Order and Notice for Meeting of Creditors to be Held on July 7, 2000" (the "Bar Date Notice"). The Bar Date Notice advised that a meeting of creditors would be held on July 7, 2000 and also contained the following information: "[I]n order to have a claim allowed and participate in the distribution

---

2. The petition was originally filed by the Debtor jointly with his spouse. The bankruptcy court subsequently dismissed the spouse from the case for reasons not material here.

3. In a declaration certified under penalty of perjury, which he filed in the bankruptcy court on August 3, 2001, Attorney Davison Lampon conceded that he received the Notice of Filing directed to his post office box.

of any dividend, a creditor must file a claim in duplicate. Non–Governmental claims not filed by October 5, 2000 and Governmental claims not filed by December 6, 2000 will not be allowed except as provided by law."

The certificate of mailing attached to the Bar Date Notice reflects that Edna Curcio, of the Office of the Chapter 13 Trustee, served the Bar Date Notice by first class mail on nine (9) parties, as well as on the Clerk. This time, Davila Torres was served as follows: "Hector Davila Torres, PO Box 2178, Bayamon PR 00960." Thus, the Bar Date Notice was also sent to Attorney Davison Lampon's business address but, unlike service of the Notice of Filing, omitted the attorney's name.

The meeting of creditors required by § 341 of the Bankruptcy Code was held on July 7, 2000. The meeting was recorded, and the minutes of the meeting were attached to the Appendix to Appellee's Brief. The minutes indicate that Davila Torres was represented at the § 341 meeting by Attorney Rodrigues Quesada. An individual by the name of Sergio Davila also was present at the meeting on behalf of Davila Torres, but the record is unclear in what capacity. The minutes further indicate that the chapter 13 Trustee attended the § 341 meeting and declined to recommend confirmation of the Debtor's chapter 13 plan.

The Debtor filed an amended plan on July 27, 2000. It is unclear from the docket whether this plan was served on parties in interest. Through his amended plan, the Debtor proposed a lump sum payment of $400,000 to creditors within five (5) years. The bankruptcy court conducted a

confirmation hearing with respect to the Debtor's amended plan on August 9, 2000.[4] At that hearing, Attorney Rodrigues Quesada again appeared on behalf of Davila Torres[5] and voiced an objection to the amended plan. At the conclusion of the hearing, the bankruptcy court determined that the Debtor's plan was not feasible and denied confirmation.

On August 25, 2000, almost three (3) months after he filed his chapter 13 petition and six (6) weeks before the October 5, 2000 bar date for filing proofs of claim, the Debtor filed a second amended plan. Through his second amended plan, the Debtor proposed to pay a base amount of $423,050 to creditors within five years through the sale of real property. The plan provided for full payment of unsecured debts plus interest at the rate of six percent per annum. The record reflects that the Debtor's second amended plan was served on "Hector Davila Torres, c/o Lcdo. Attorney Davison Lampon," at the attorney's office address.

In early September of 2000, the chapter 13 Trustee recommended confirmation of the Debtor's second amended plan. In the absence of objections, the bankruptcy court, on October 13, 2000, entered an order confirming the plan. Approximately ten (10) months after the entry of the confirmation order, the chapter 13 Trustee filed a Final Report and Account (the "Trustee's Final Report"), which indicated that $65,800 was distributed to three creditors from the Debtor's payments into the plan. According to the chapter 13 Trustee, the Debtor received a refund of $434,435.32. Because of their failure to

---

**4.** A transcript of the hearing held on August 9, 2000 is contained in the Appendix in this appeal. The Debtor's amended plan was summarized on the record. *See* Transcript at 3.

**5.** *See* Transcript at 2.

timely file a proof of claim, no monies were paid to Davila Torres or Vicenty Cardona.

On July 27, 2001, ten (10) days after the chapter 13 Trustee filed the Trustee's Final Report and well past the October 5, 2000 bar date for filing proofs of claim, the Creditors filed a proof of claim in the amount of $271,395.84 based upon the Arecibo Superior Court judgment. The Creditors also filed a motion to allow late filing of the proof of claim and a motion objecting to the Trustee's Final Report. The Creditors further requested that the Debtor's case be dismissed.

In their motion to file a late proof of claim, the Creditors argued that: (1) the claims bar date should be extended for the Creditors because they lacked notice of the proceedings in the case; (2) Vicenty Cardona had been out of the country for an extended period of time in 2000 and did not receive any notices issued in the Debtor's bankruptcy case; (3) because Davila Torres was incompetent in September of 2000 due to mental illness, he was entitled to file a late proof of claim pursuant to Bankruptcy Rule 3002(c)(2); and (4) the late filing of the Creditors' proof of claim was justified by excusable neglect. In support of dismissal, the Creditors maintained that the bankruptcy court lacked jurisdiction over the Debtor's chapter 13 case because the Debtor's unsecured debt exceeded the debt ceiling set forth in § 109(e) of the Bankruptcy Code.[6]

In addition to the aforesaid motions filed in the main case, on August 16, 2001, the Creditors commenced an adversary proceeding against the Debtor by filing a complaint for declaratory judgment which contained objections to the Debtor's discharge and the Trustee's Final Report. In their complaint, the Creditors sought a determination that the Debtor was foreclosed from challenging the Arecibo Superior Court judgment under principles of *res judicata.* They also sought dismissal of the Debtor's chapter 13 case on grounds that it was commenced in bad faith and that the Debtor was ineligible for chapter 13 protection. The Debtor answered the complaint and filed an objection in his main bankruptcy case to the Creditor's proof of claim on the ground that it was untimely filed.

The bankruptcy court held a pretrial conference in the adversary proceeding on December 14, 2001. A review of the transcript of the pretrial conference reveals that after hearing oral arguments, the bankruptcy court determined that the adversary proceeding and the Debtor's objection to the Creditors' claim should be consolidated. The court also decided that an evidentiary hearing was required and scheduled a two day trial for April 22 and 23, 2002.[7] The bankruptcy court further directed the parties to file memoranda regarding post-confirmation dismissal and Debtor's eligibility for chapter 13 relief under § 109(e) of the Bankruptcy Code. On April 12, 2002, Davila Torres filed a motion to continue the trial, which the bankruptcy court granted pending a decision on the Creditors' request that the case be dismissed.

In addition to briefing the § 109(e) issues, the Creditors filed two written declarations in support of their motion to file proof of claim late. One is a sworn declaration submitted by Attorney Davison

---

**6.** As of the date of the filing of the Debtor's petition, § 109(e) provided debt ceiling that limited eligibility for chapter 13 relief to individuals whose noncontingent, liquidated, unsecured debt totaled less than $269,250.00.

**7.** This scheduling order was announced in court as reflected in the official transcript of the hearing; however, the order is not reflected on the docket.

Lampon on August 3, 2001 and is contained in the Appellants' Appendix. In his declaration, Attorney Davison Lampon stated that, from the beginning of his representation of the Creditors in the Arecibo Superior Court action in 1996 until 2000, he received his instructions from Davila Torres, not Vicenty Cardona. He added that he was not advised until January 2001 that Davila Torres suffered from dementia. Attorney Davison Lampon further stated: "As far as I know, my Clients have not received any notice of the above-mentioned bankruptcy case." He said that he received the Notice of Filing dated June 9, 2000, which was directed to his post office box. He also stated that, despite certification by Debtor's attorney that all parties on the Master Address List were served with the second amended plan on August 25, 2000, he did not receive a copy of the Debtor's amended plan until July of 2001 when the Debtor, through successor counsel, provided him with a copy.[8] In his declaration, Attorney Davison Lampon did not specifically mention the Bar Date Notice.

The second declaration submitted by the Creditors contained a series of statements made by Vicenty Cardona. In her declaration, Vicenty Cardona stated that Davila Torres handled all of the financial affairs of their conjugal partnership. According to Vicenty Cardona, in the mid 1990's, while the Arecibo Superior Court action was pending, Davila Torres began to experience memory lapses and speech impairment. These episodes worsened in the late 1990s, requiring occasional hospitalizations. In May of 2000, approximately one month before the Debtor filed his chapter 13 petition, Davila Torres was diagnosed with a disabling dementia. According to

Vicenty Cardona, Davila Torres has been hospitalized since August of 2000, with the exception of weekends when he stays with his children at their homes.

Vicenty Cardona also represented that she made extended annual visits to Corsica, France beginning in 1994 and had returned to Puerto Rico from one such visit in September of 2000, approximately one month before the bar date for filing proofs of claim in the Debtor's bankruptcy case. According to Vicenty Cardona, she was unaware of the bankruptcy case until January of 2001, when she received some documents from Attorney Davison Lampon. Vicenty Cardona declared that she never received the second amended plan or a motion filed by the Debtor seeking confirmation of his plan and she did not believe that her husband had received those pleadings either. She did not specifically mention the Bar Date Notice in her declaration.

Vicenty Cardona further represented that it took her "many months" to arrange for counsel with Davila Torres's cooperation "during one of his lucid intervals." On May 8, 2001, approximately one year after being diagnosed with dementia, Davila Torres executed a notarized General Power of Attorney in favor of Vicenty Cardona, granting her authority to act on his behalf in the Debtor's case.

Attached to Vicenty Cardona's declaration were several documents related to Davila Torres' medical history and condition. One was a "Physician's/Medical Officer's Statement of Patient's Capability to Manage Benefits," dated February 28, 2000 (the "Statement"), a form used by the Social Security Administration. In the Statement, Dr. Angel M. Davila Franco indicated that he examined Davila Torres

---

8. The record on appeal contains no evidence that any of the notices issued in this case and served on the Creditors at Attorney Davison Lampon's office address by the Clerk or by any party in interest were returned as undeliverable.

on February 2, 2000 and believed Davila Torres was incapable of managing, or directing the management of, his benefits. Dr. Davila Franco stated that Davila Torres had been examined by several doctors, all of whom concluded that he suffers from dementia "with Alzheimers' Disease," that he has problems with coordination and judgment, that he needs care and supervision at all times, that he lives in an institution, and that he is under the care of multiple parties. In response to the question on the form "Do you expect the patient to be able to manage funds in the future … ?" Dr. Davila Franco checked the box marked "No."

Vicenty Cardona also attached a "Physician's/Medical Officer's Statement of Patient's Capability to Manage Benefits" completed by another doctor, Juan J. Rodriguez Hernandez, M.D., approximately two months later on April 5, 2000. In this second Statement, Dr. Rodriguez Hernandez also stated that in his opinion Davila Torres could not manage benefits at that time or in the future. In an attached medical report dated March 29, 2000, Dr. Rodriguez Hernandez stated that he had examined Davila Torres for dementia and had recommended medication.

The continued evidentiary hearing in the adversary proceeding was never held.[9] Instead, the bankruptcy court ruled on the pleadings and declarations filed by the parties and, on January 7, 2003, issued an opinion and order in both the adversary proceeding and the main case with respect to the Creditors' motion to allow the late filing of their proof of claim, the Debtor's objection to their claim, the motion to dismiss, and the other issues raised in the adversary proceeding (the "underlying order").

In the underlying order, the bankruptcy court found that the Creditors had constitutionally adequate notice of the bankruptcy case and, implicitly, the Bar Date Notice, because the Notice of Filing was sent to Attorney Davison Lampon. According to the bankruptcy court, this afforded the Creditors sufficient notice of the claims bar date. The court further noted that "[the] creditors have actively participated in these bankruptcy proceedings represented by counsel at both the § 341 meeting of creditors, which was held on July 7, 2000, and the first confirmation hearing, which was held on August 9, 2000." The bankruptcy court emphasized that Attorney Rodrigues Quesada's representation of the Creditors at the § 341 meeting and the first confirmation hearing demonstrated that the Creditors had notice of the bankruptcy case.

Because they had received proper notice, the Creditors' request for dismissal of the case was denied. The court found that confirmation of the second amended plan and principles of *res judicata* barred the Creditors from challenging the Debtor's eligibility for chapter 13 relief, even though his total unsecured debt exceeded the debt ceiling set forth in § 109(e).

Finally, the bankruptcy court determined that the Creditors were not entitled to file a late proof of claim. The court first rejected the Creditors' argument that the doctrine of excusable neglect warranted allowance of the late filed claim, because it held the excusable neglect doctrine to be inapplicable to chapter 13 cases. Second, the court refused to extend the time for filing under Bankruptcy Rule 3002(c)(2), because it found that the Creditors failed to prove that Davila Torres was

---

**9.** There is no explanation on the record for why the originally-scheduled evidentiary hearing was never held or why the Creditors' request for an evidentiary hearing in conjunction with their motion for reconsideration was never acted on.

incompetent "at the relevant times in this litigation." Accordingly, the bankruptcy court concluded that, under § 502(b)(9), the Debtor's objection to claim should be sustained and the Creditors' claim disallowed because it was not timely filed.

The Creditors moved to reconsider, amend or alter the underlying order [10] and for additional findings.[11] They asserted that the bankruptcy court erred in: (1) finding that the Creditors had adequate notice of the bankruptcy case and, implicitly, the Bar Date Notice; (2) refusing to dismiss the case; (3) concluding that the doctrine of excusable neglect does not apply in chapter 13 cases; and (4) concluding that Davila Torres was not incompetent for purposes of extending the claims bar date. The Creditors also raised a new issue in their motion to reconsider; namely, that the confirmation order should be vacated because it was procured by fraud.

In their motion to reconsider, the Creditors again requested an evidentiary hearing. Although the docket does not reflect that the bankruptcy court acted on this request, no evidentiary hearing was held. In an opinion dated April 15, 2004, the bankruptcy court denied reconsideration of the underlying order. In this second order, the court incorporated the factual findings it made in the underlying order,

clarified certain findings and made additional findings.

With respect to the notice issues, the bankruptcy court observed that Davila Torres was included in the Master Address List with the name and address of his attorney in the Arecibo Superior Court action, and that this address was used to notify him of various events in the case. The bankruptcy court commented that the Creditors and their attorneys at no time notified the bankruptcy court of any alternate address, and that Attorney Rodriguez Quesada did not enter an appearance on behalf of the Creditors in the Debtor's chapter 13 case. Under these circumstances, the bankruptcy court concluded that it was reasonable to notify the Creditors through Attorney Davison Lampon.

The bankruptcy court clarified its findings with regard to the Davila Torres' competency in relation to the late filing of the claim. The court found that Davila Torres did not show that he was incompetent when the Notice of Filing and Bar Date Notice were sent to Attorney Davison Lampon. The bankruptcy court emphasized that Davila Torres was competent enough to retain counsel and give a power of attorney to Vicenty Cardona in May of 2001. The court attributed the Creditors' lateness in filing a claim to Vicenty Cardona's decision to leave her husband and her

**10.** Bankruptcy Rule 9023 makes Fed.R.Civ.P. 59 applicable in bankruptcy cases; Rule 59(e) governs reconsideration. To succeed on a Rule 59(e) motion, the moving party "must demonstrate the 'reason why the court should reconsider its prior decision' and 'must set forth facts or law of a strongly convincing nature' to induce the court to reverse its earlier decision. The movant 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Lopez Jimenez v. Pabon Rodriguez (In re Pabon Rodriguez)*, 233 B.R. 212, 219 (Bankr.D.P.R.1999) (citing *Dale & Selby Superette & Deli v. United States Dep't of Agriculture*, 838 F.Supp. 1346, 1347 (D.Minn.1993)); *In re Wedgestone Fi-*

*nancial*, 142 B.R. 7, 8 (Bankr.D.Mass.1992). The moving party cannot use a Rule 59(e) motion to cure procedural defects, to offer new evidence or to raise arguments that should have been presented to the court in the original motion. *Pabon Rodriguez*, 233 B.R. at 219–220.

**11.** Bankruptcy Rule 7052 makes Fed.R.Civ.P. 52, which governs motions to amend findings, applicable to bankruptcy cases. To succeed on a Rule 52(b) motion, the moving party must show that the court made errors of law or fact, or that newly discovered evidence warrants further findings.

delay in obtaining counsel and to new counsel's failure to monitor the chapter 13 case.

Reiterating its denial of the Creditors' motion to file a late proof of claim, the court stated that even if the excusable neglect doctrine would permit late filing of claims in a chapter 13 case, since the notice to the Creditors was not deficient, due process did not require leave to file a late claim. Finally, the bankruptcy court denied as untimely the Creditors' request to vacate the confirmation order.

## II. *JURISDICTION*

■ A bankruptcy appellate panel is required to determine its jurisdiction before proceeding to the merits of an appeal even if a jurisdictional issue is not raised by the parties. *See In re George E. Bumpus, Jr. Constr. Co. Inc.*, 226 B.R. 724 (1st Cir. BAP 1998).

### A. Orders on Appeal

■ Federal Rule of Appellate Procedure 3(c) "requires, *inter alia*, that a notice of appeal 'designate the judgment, order or part thereof appealed from.' The rule's commands are jurisdictional and mandatory." *Kotler v. American Tobacco Co.*, 981 F.2d 7, 10–11 (1st Cir.1992). In their Notice of Appeal, the Creditors state that they are appealing the order of the bankruptcy court entered on April 15, 2004.[12] Thus, from the face of the Notice of Appeal, only the order denying the motion for reconsideration is subject to review, not the underlying order. However, although an appellate court may decline to review an underlying order where the appeal is solely from the denial of a Rule 59(e) motion, *see Aybar v. Crispin–Reyes*, 118 F.3d 10 (1st Cir.1997), the First Circuit has held that Federal Appellate Rule

3(c) "should be construed liberally ... [and] ... [n]oncompliance with 'mere technicalities' will not defeat appellate jurisdiction. Rather, an appeal survives so long as the litigant's filing 'is the functional equivalent of what the rule requires.'" *Kotler*, 981 F.2d at 11 (citations omitted).

When questioned about the scope of the appeal at oral argument, counsel for both the Appellants and the Appellee stated that the appeal included both the underlying order and the order denying reconsideration. Moreover, both parties filed legal memoranda addressing the merits of both the reconsideration order and the underlying order; it thus appears that the parties regard this appeal as including both orders. Accordingly, the Panel shall consider the notice of appeal as embracing the merits of the underlying order and the order denying reconsideration.

### B. Finality

■ A bankruptcy appellate panel may hear appeals from "'final judgments, orders and decrees,' ... or 'with leave of the court, from interlocutory orders and decrees.'" *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (citing 28 U.S.C. § 158(a)(1) and (a)(3)). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'[is a decision of] some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (quoting *In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Given the nature of the usual bankruptcy case, however, courts have "adopt[ed] a pragmatic approach in determining the fi-

---

12. The Memorandum and Order were entered on the docket on April 19, 2004.

nality of bankruptcy orders." *Bank of New England,* 218 B.R. at 647 (quoting *Official Bondholders Comm. v. Chase Manhattan Bank (In re Marvel Entm't Group, Inc.),* 209 B.R. 832, 835–36 (D.Del. 1997)). Thus, a bankruptcy court order may be appealable if it "conclusively determines 'a discrete dispute within the larger case.'" *Id.* (quoting *Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington),* 992 F.2d 3, 5 (1st Cir.1993)).

■ An order denying reconsideration is a final appealable order if the underlying order was a final appealable order, and together the orders end the litigation on the merits. *Fiffy v. Nickless (In re Fiffy),* 293 B.R. 550, 553 (1st Cir. BAP 2003); *Bradshaw v. U.S. (In re Bradshaw),* 283 B.R. 814, 817 (1st Cir. BAP 2002). Therefore, whether the bankruptcy court's denial of the Creditors' motion to reconsider is a final appealable order depends on the finality of the underlying order and the cumulative effect on the litigation on the merits. *See Bradshaw,* 283 B.R. at 817; *Fiffy,* 293 B.R. at 553.

■ An order disallowing a proof of claim is a final appealable order. *Hi–Tech Communications Corp. v. Poughkeepsie Business Park, LLC (In re Wheatfield Business Park, LLC),* 308 B.R. 463, 465 (9th Cir. BAP 2004). The bankruptcy court's order denying the Creditors' motion to file a late proof of claim is thus clearly a final appealable order which this Panel has jurisdiction to review.

■ The bankruptcy court's order denying the Creditors' motion to dismiss is likewise a final appealable order. Although orders denying motions to dismiss are generally interlocutory, such an order is final and appealable where a reorganization plan has already been confirmed, since the order effectively ends all litigation on

the merits of dismissal. *See Bank of New England,* 218 B.R. at 646.

Thus, in the present case, the order denying the motion to reconsider is also a final order because (1) the underlying orders are both final appealable orders, and (2) the order on the motion to reconsider effectively ended the litigation between the Creditors and the Debtor over the timeliness of the Creditors' proof of claim and the treatment of the claim in the Debtor's chapter 13 plan.

### III. *STANDARD OF REVIEW*

■ The Panel must next consider the standard of review to be applied to the various decisions made by the bankruptcy court below. A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr.P. 8013. The clearly erroneous standard governs review of factual findings even when those findings are based on documentary evidence or a "paper" record. *Id.; see also Boroff v. Tully (In re Tully),* 818 F.2d 106, 108 (1st Cir.1987). The bankruptcy court's order contained two essential findings of fact that will be reviewed for clear error: (1) the Creditors had imputed notice of the bankruptcy case, and (2) Davila Torres did not show he was incompetent at all material times.

■ A finding of fact is considered clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Watson v. Boyajian (In re Watson),* 309 B.R. 652, 658 (1st Cir. BAP 2004) (citations omitted), *aff'd,* 403 F.3d 1 (1st Cir.2005). "If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trial

of fact." *Id.* "The clearly erroneous standard requires [the] Panel to give great deference to the bankruptcy court as the trier of fact," *In re Fiffy,* 293 B.R. at 554, "the burden of proof is on the party attacking their validity." 10 Lawrence P. King, *Collier on Bankruptcy,* ¶ 9013.02 (Supp.2004).

 Unlike findings of fact, a bankruptcy court's conclusions of law are reviewed *de novo. Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 107–109 (1st Cir. 1997). Therefore, where the issue on appeal is essentially one of statutory interpretation the Panel reviews the issue *de novo. See Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995). Here, the bankruptcy court's denial of the Creditors' motion to dismiss the Debtor's chapter 13 case was based on a determination that the confirmation of the second amended plan precluded a challenge to the Debtor's eligibility for chapter 13 relief, notwithstanding the debt limitations set forth in § 109(e). Its reasoning was premised on an interpretation of the principles of *res judicata* and the binding effect of a confirmed plan under § 1327(a). Accordingly, these conclusions of law will be reviewed *de novo.* Similarly, the bankruptcy court's conclusion that the excusable neglect doctrine does not apply in chapter 13 cases is also a conclusion of law subject to *de novo* review.

 In addition to the clearly erroneous and *de novo* standards of review, "[t]he appellate court in a bankruptcy appeal may apply an abuse of discretion standard on review of a decision or action by a Bankruptcy Court when such decision is within the discretion of the Bankruptcy Court." 9E Am.Jur.2d *Bankruptcy* § 3512 (2004). Since the bankruptcy court is afforded much discretion in determining whether a creditor in a chapter 13 case

should be granted an extension of time to file a proof of claim, as allowed under the narrow circumstances set forth in Bankruptcy Rule 3002(c), this Panel must determine whether the bankruptcy court abused its discretion when it refused to grant an extension of time under Rule 3002(c)(2). Motions to reconsider and motions to amend or alter judgment are likewise reviewed for manifest abuse of discretion. *Aguiar v. Interbay Funding, LLC (In re Aguiar),* 311 B.R. 129, 132 (1st Cir. BAP 2004).

 A bankruptcy court's "[j]udicial discretion is necessarily broad—'but it is not absolute,'" *Colon v. Rivera (In re Colon),* 265 B.R. 639, 643 (1st Cir. BAP 2001) (quoting *Perry v. Warner (In re Warner),* 247 B.R. 24, 25 (1st Cir. BAP 2000); *Indep. Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988)). Thus, abuse of discretion may be found in limited circumstances, such as:

> [W]hen a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and not improper factors are assessed, but the court makes a serious mistake in weighing them.

*In re Colon,* 265 B.R. at 643.

## IV. DISCUSSION

### A. Due Process and Bankruptcy Proceedings

 Notwithstanding strict application of the limits and duties imposed on creditors by the Bankruptcy Code and the Bankruptcy Rules, proceedings in bankruptcy cases are subject to the requirements of due process under the Fifth Amendment to the United States Constitution. *Aboody v. U.S. (In re Aboody),* 223 B.R. 36, 40 (1st Cir. BAP 1998). Thus, general principles limiting a creditor's

rights in bankruptcy give way when the creditor has not received sufficient notice of the bankruptcy case. *See. In re O'Shaughnessy*, 252 B.R. 722, 731 (Bankr. N.D.Ill.2000); *In re Corporacion de Servicios Medico–Hospitalarios de Fajardo, Inc.*, 149 B.R. 746, 750 (Bankr.D.P.R.1993).

 The Supreme Court has repeatedly stated that in order to satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Accordingly, a debtor's objection to a late claim cannot constitutionally be sustained and the creditor's claim barred if the debtor's failure to list, or inaccurate listing of, the creditor causes the creditor to miss the proof of claim deadline. *In re Anderson*, 159 B.R. 830, 836–40 (Bankr. N.D.Ill.1993). Similarly, confirmation of a chapter 13 plan cannot be *res judicata* as to objections later raised by a creditor if the creditor has not received adequate notice in the bankruptcy case.

### 1. Notice of the Bankruptcy Filing and Deadline for Filing Claims

 In order to ensure sufficient notice to parties in interest of various events in a bankruptcy case, the Bankruptcy Code and Rules impose specific obligations on the debtor and the Clerk of the bankruptcy court. For example, the debtor must submit a list or a schedule of the names and addresses of all creditors. 11 U.S.C. § 521(1); Fed. R. Bankr.P. 1007(a). Notices to parties in interest that are required to be sent by the Clerk, or the debtor if the court directs, are mailed to the names and addresses as they appear on the creditor list or schedules submitted by the debtor, unless the creditor files a request designating a different mailing address. *See* Fed. R. Bankr.P. 2002(g)(2). The creditor list submitted by the debtor must therefore contain information reasonably calculated to provide notice to the creditor. 9 Lawrence P. King, *Collier on Bankruptcy* ¶ 1007.02[2] (Supp.2004).

The debtor's obligation to provide an appropriate listing of his/her creditors is further supplemented by Puerto Rico Local Bankruptcy Rule 2002, which requires the debtor to file a "Master Address List." The Master Address List must include "the name and current mailing address, including zip code, of the debtor ... and the name and last known mailing address for every creditor...." PRLBR 1002(a), (b)(1). The local rule further provides that the debtor shall be responsible for the preparation and accuracy of the Master Address List. PRLBR 2002(b)(5).

Section 342(a) of the Bankruptcy Code and Bankruptcy Rule 2002(f) require the Clerk of the bankruptcy court to send notice, by mail, to the debtor and all creditors of the order for relief and of the deadline for filing claims pursuant to Bankruptcy Rule 3002.[13] Those notices

---

**13.** Federal Rule of Bankruptcy Procedure 3002 provides in relevant part:
 **(c) Time for filing.**
 In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

...
(2) In the interest of justice and if it will not unduly delay the administration of the case, the court may extend the time for filing a proof of claim by an infant or incompetent person or the representative of either.

must include the time and place of the § 341 meeting, the deadline for filing proofs of claim, and, respectively, the deadline and time for objections to and the hearing on confirmation of the chapter 13 plan. *See* Fed. R. Bankr.P. 2002(a), (b). Puerto Rico Local Bankruptcy Rule 2002 also provides that the Clerk shall give the required notice of the date for filing claims in chapter 7 and chapter 13 cases, unless the court directs otherwise. PRLBR 2002.

Strict application of the Rule 3002 deadline for filing claims assumes that the creditor has received this prescribed notice; late filed claims may be permitted in cases where notice to the creditor was materially deficient or misleading. *See In re Collier,* 307 B.R. 20, 25 (Bankr.D.Mass.2004) (citations omitted); *see also U.S. v. Cardinal Mine Supply,* 916 F.2d 1087, 1089–92 (6th Cir.1990); 4 K. Lundin, *Chapter 13 Bankruptcy,* § 290.1 (Supp.2002). For example, a creditor's actual but generalized knowledge of the pendency of a bankruptcy case does not impose on the creditor the burden of constantly inquiring of the court about possible bar dates. *Matter of Intaco Puerto Rico., Inc.,* 494 F.2d 94, 99 (1st Cir. 1974). In *Intaco,* the United States Court of Appeals for the First Circuit held that a creditor who was not given formal notice of the pendency of the bankruptcy or the developments in the case, including the bar date for claims, but had a generalized knowledge of the pendency of the case, was not barred from filing its claim late. *Id.*

However, where a creditor has more than a generalized knowledge of the bankruptcy case, and where the creditor or creditor's attorney has in fact received actual notice of the pendency of the overall bankruptcy case in time to protect the creditor's rights, lack of a specific notice of the bar date has been held not to violate the creditor's right to due process. *See Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.),* 920 F.2d 1428, 1430–31 (9th Cir.1990) (creditor who received notice of § 341 meeting should have added itself to the list to preserve its rights); *Aboody,* 223 B.R. at 40; *In re Glow,* 111 B.R. 209, 219 (Bankr.N.D.Ind.1990).

Furthermore, the overwhelming weight of authority is that, in bankruptcy cases, notice served on a creditor's counsel is presumed to satisfy both bankruptcy and due process notice requirements as to the creditor, so long as there is a nexus between the creditor's retention of the attorney and the creditor's claim against the debtor. It is clear that notice to the creditor's attorney is sufficient notice to the creditor where that attorney participates in the bankruptcy case. *See Curtis v. LaSalle Nat'l Bank (In re Curtis),* 322 B.R. 470 (Bankr.D.Mass.2005) (creditor bound by knowledge held by its attorney who appeared in case, notwithstanding notice not separately given to creditor); *In re Glow,* 111 B.R. at 219 (because attorney appeared at § 341 meeting, creditor bound by notices in the case). Courts have similarly imputed notice to a creditor where the attorney who received notice did not appear in the bankruptcy case, but represented the creditor with respect to prebankruptcy litigation against the debtor. *In re Schicke,* 290 B.R. 792, 802–03 (10th Cir. BAP 2003). In *Schicke,* the United States Bankruptcy Appellate Panel for the Tenth Circuit considered the debtor's duty to list creditors and observed that it may be appropriate for the debtor to schedule a creditor in care of its attorney, provided the attorney is the creditor's agent in matters related to the debtor. *Id.* at 803.

Similarly, in *In re Griggs,* the bankruptcy court considered the sufficiency of notice to a creditor's attorney who had represented the creditor in a state court

collection action giving rise to the creditor's claim. 306 B.R. 660 (Bankr.W.D.Mo. 2004). The court mailed notices of the § 341 meeting and the claims bar date to the attorney who subsequently appeared on the creditor's behalf at the § 341 meeting. *Id.* at 661. The creditor failed to timely file a proof of claim, and the debtor objected to the late filed claim. *Id.* at 662. The bankruptcy court ruled that the creditor had not been denied due process, because the attorney was aware of the debtor's bankruptcy immediately after it was filed and appeared at the § 341 meeting. *Id.* at 665–66. Because the clerk mailed notice of the claims bar date to the attorney, the court imputed that notice to the creditor, justifying denial of the creditor's motion to file the proof of claim late. *Id.*

Still, there are limits. Court deadlines have been held insufficient to bind a creditor where notice was given to an attorney on behalf of a claim held by another party or to an attorney who represented the creditor in an unrelated matter. *Maldonado v. Ramirez,* 757 F.2d 48 (3d Cir. 1985); *Lubeck v. Littlefield's Restaurant (In re Fauchier),* 71 B.R. 212 (9th Cir. BAP 1987). And notice sent to the law firm of a creditor's attorney, but which did not identify the creditor or the party in the bankruptcy case, has been held not to satisfy due process concerns. *In re Greater Southeast Cmty. Hosp. Corp. I,* 324 B.R. 162 (Bankr.D.D.C.2005); *cf. In re Collier,* 307 B.R. at 27 (confusing notice of bar date sent by debtor to creditors).

Application of these principles to the matter before us is complicated by the combination of the Debtor's failure to list

an address for Davila Torres separate and apart from his prepetition attorney's address in Schedule F and the Master Address List, the subsequent omission of the attorney's name when the chapter 13 trustee served the Bar Date Notice and the omission of Vicenty Cardona from both the Master Address List and the Debtor's bankruptcy schedules. Yet amid all of the smoke, it clear enough to see that the contours of due process have been satisfied.

Under Puerto Rican law, a marriage creates a third legal entity—the conjugal partnership. *Fernandez–Cerra v. Comm. Ins. Co. of Newark,* 344 F.Supp. 314 (1972); *see also* 31 P.R. Laws Ann. § 3622. Assets acquired by either spouse during the marriage belong not to the spouses as individuals, but are held as property of the partnership. 31 P.R. Laws. Ann. § 3641.[14] Although this Panel has, in an effort to avoid unnecessary confusion, referred to the Creditors in the plural, the conjugal partnership is the true holder of the claim against the Debtor. Because the state court judgment is an asset held by the conjugal partnership and not Davila Torres or Vicenty Cardona individually, notice must have been sufficient as to the conjugal partnership in order to satisfy due process.

Either spouse may represent and make decisions regarding the conjugal partnership. 31 P.R. Laws Ann. § 284. For the purposes of this case, however, only Davila Torres can be treated as a representative of the conjugal partnership. Although Vicenty Cardona was legally capable of such representation, the Debtor *chose* Davila Torres as the partnership's representative

---

**14.** 31 P.R. Laws Ann. § 3631 contains some limited exceptions to this general rule; property brought into the marriage as the spouse's individual property, property acquired by gift, legacy or descent to one of the spouses, property acquired for exchange of a spouse's individual property and property bought with money belonging exclusively to one of the spouses is considered the separate property of the spouse.

by only listing Davila Torres as the holder of the unsecured claim and by directing all notices to Davila Torres in care of his attorney. At no time did the Debtor attempt to treat Vicenty Cardona as the representative of the partnership; in fact, he failed to list her anywhere in his bankruptcy schedules or on the Master Address List.

Service of the Notice of Filing on Attorney Davison Lampon constituted adequate notice to Davila Torres, and therefore the conjugal partnership, and the Notice of Filing was hardly the generalized knowledge described and deemed insufficient in *Intaco*. While it is true that service of the Bar Date Notice may have been deficient (in that the name of Attorney Davison Lampon was omitted and the mail *may* not have reached the intended destination), the Notice of Filing properly served on Attorney Davison Lampon was sufficient to impose upon him, successor counsel and the Creditors the obligation to monitor the proceedings and the deadlines attendant thereto.

■■■ Moreover, even if service of the Notice of Filing was itself insufficient to satisfy due process requirements relative to the claims bar date, any due process concern with respect to notice to the Creditors is eviscerated by the representation afforded by Attorney Rodrigues Quesada in the bankruptcy case itself. Attorney Rodrigues Quesada actually appeared at the § 341 meeting and at the first confirmation hearing on behalf of Davila Torres, although he did not enter a formal appearance. Having thus participated in the bankruptcy process, the Creditors cannot now claim that the notice of that process was insufficient.

The bankruptcy court committed no clear error in its findings of fact regarding notice to the Creditors. The unrebutted evidence was that the Creditors' attorneys had actual knowledge of the pendency of the bankruptcy; one of them appeared on the Creditors' behalf twice prior to the expiration of claims bar date. And neither the attorneys nor the Creditors requested that the Creditors' address be changed on the Master Address List. Given the knowledge of, and participation in, the case by the Creditors' two attorneys, the bankruptcy court did not err in finding that the Creditors' due process rights were not violated by any defect in the service of the notices.[15]

### 2. Eligibility for Relief under Chapter 13 and the Effect of Plan Confirmation

To be eligible for relief under chapter 13 of the Bankruptcy Code, the debtor must be an individual, must have regular income and must not have debts that exceed the dollar limitations stated in § 109(e). K. Lundin, *Chapter 13 Bankruptcy*, § 5.1 (2002).

■■■ However, the Bankruptcy Code also provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has

---

**15.** Bankruptcy Rule 1007(m) prescribes special notice requirements where the debtor knows that a scheduled creditor is a minor or is an incompetent person. In such cases, "the debtor also shall include the name, address, and legal relationship of any person upon whom process would be served in an adversary proceeding against the infant or incompetent person in accordance with Rule 7004(b)(2)." Given that there is no evidence that the Debtor was aware of Davila Torres' alleged incompetency at the time he prepared his schedules, this court assumes that notice was proper and that the special notice requirements of Rule 1007(m) are not applicable in the present case.

objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). Assuming sufficient notice of the plan and an opportunity for creditors to be heard on their objections to confirmation, an order confirming a chapter 13 plan has *res judicata* effect as to all issues dealt with under the plan, including the eligibility of the debtor for chapter 13 relief. *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. BAP 2001). Therefore, although ineligibility may constitute grounds for dismissal or conversion of a chapter 13 case, so long as no objection has been raised pre-confirmation, the confirmation order represents a binding and conclusive determination of the debtor's eligibility for chapter 13 relief and the other prerequisites to confirmation. *See Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73 (9th Cir.1995); *In re Nikoloutsos*, 199 B.R. 624, 625–27 (Bankr. E.D.Tex.1996).

■ Because notice of the bankruptcy case was sufficient and Attorney Rodrigues Quesada actively participated on the Creditors' behalf, the Creditors are bound by the bankruptcy court's confirmation of Debtor's second amended plan. Attorney Rodrigues Quesada appeared at the confirmation hearing on Debtor's first amended plan and was heard on his objection, which was sustained. At that time, he did not pursue dismissal of the Debtor's case for any reason and did not object to the plan on the grounds that the Debtor's unsecured debts exceeded the debt ceiling set forth in § 109(e). The Debtor then filed a second amended plan, to which the Creditors did not object. The Creditors cannot claim they lacked adequate notice of the confirmation proceedings. The bankruptcy court did not err in holding that the Creditors are bound by the provisions of the confirmed plan and are barred from

challenging the Debtor's eligibility for relief under § 109(e).

## B. Revocation of Confirmation Order as Obtained by Fraud or Bad Faith

■ Motions to reconsider are not to be used by parties to "advance arguments that could and should have been presented originally to the court." *Jimenez v. Rodriguez (In re Rodriguez)*, 233 B.R. 212, 219 (Bankr.D.P.R.1999) (citing, among other cases, *Aybar v. Crispin–Reyes*, 118 F.3d 10, 16 (1st Cir.1997)). In this case, however, the court below did address the argument, raised for the first time in the Creditors' motion to reconsider, that the order confirming the Debtor's chapter 13 plan be revoked as obtained by fraud or bad faith. This Panel finds that the bankruptcy court did not abuse its discretion in refusing to revoke the confirmation order for two reasons.

First, the Creditors did not file an objection to confirmation of the plan on grounds of fraud or bad faith. As with the Creditors' § 109(e) argument, the request for revocation is barred by confirmation of the plan and the *res judicata* effect of that confirmation. Second, although an order of confirmation may in some cases be revoked for bad faith or fraud, requests for revocation on these grounds must be made within 180 days after the date of the entry of the order. *See* 11 U.S.C. § 1330(a) (2004). In this case, the order of confirmation was entered on October 13, 2000, and the Creditors did not seek revocation of the order until January 17, 2003 in connection with their motion for reconsideration—well after the expiration of the 180 day period. There is no provision in the Code or Rules allowing an extension of time for raising objections based on fraud or bad faith. Thus, the bankruptcy court properly rejected the request to revoke its

order confirming Debtor's second amended plan.

## C. Late Filing of Claims in Chapter 13 Cases

In chapter 13 cases, a timely filed proof of claim is a precondition to allowance of the claim and the creditor's right to receive a distribution. Section 502(b)(9) provides, in pertinent part:

(b) ... [T]he court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

(9) Proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1)(2) and (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure....

11 U.S.C. § 502(b)(9) (2004); *see also* Fed. R. Bankr.P. 3002(a) ("An unsecured creditor ... must file a proof of claim for the claim ... to be allowed....").

Although § 502 does not specify the time frame within which claims must be filed, the deadlines for filing proofs of claim in chapter 13 cases are prescribed by Bankruptcy Rule 3002. Rule 3002 provides, in relevant part:

(c) Time for Filing. In a ... chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed *not later than 90 days after the first dates set for the [§ 341] meeting of creditors* ...

Fed. R. Bankr.P. 3002(c) (emphasis added).

### 1. *Allowance of Late Filing of Claim for Excusable Neglect*

■ The bankruptcy court did not err in finding the excusable neglect exception to be inapplicable in the present chapter 13 case, and refusing to allow the Creditors' late-filed claim on that basis. Numerous courts, including the United States Bankruptcy Appellate Panel for the First Circuit, have held that the claim deadline in chapter 13 cases cannot be extended for excusable neglect so long as due process concerns are satisfied. *See Aboody*, 223 B.R. at 37–39 (collecting cases); *see also In re Wright*, 300 B.R. 453, 458–59 (Bankr. N.D.Ill.2003).[16]

### 2. *Bankruptcy Rule 3002(c) and Extension of Time for Filing Proof of Claim*

■ Despite the strict application of the Rule 3002 deadline for filing proofs of claim, subsection (c) allows a bankruptcy court to grant an extension of time for filing a proof of claim in a chapter 13 case. Rule 3002(c)(2) provides:

In the interest of justice and if it will not unduly delay the administration of the case, *the court may extend the time for filing a proof of claim by an* infant or *incompetent person or the representative* of either.

Fed. R. Bankr.P. 3002(c)(2) (emphasis added).[17]

---

**16.** Bankruptcy Rule 9006(b), which governs requests for extensions of time in bankruptcy cases, generally allows extensions of time based on "excusable neglect." Rule 3002(c) is expressly excepted from the general terms of Rule 9006(b), thus allowing extensions of time to file proofs of claim in chapter 13 cases only under the circumstances listed in Rule 3002(c)(1)–(5). *See Aboody*, 223 B.R. at 37–38.

**17.** Bankruptcy Rule 3002(c) contains other exceptions not relevant to the case at hand, including a longer period of time and possibility of extension of time for governmental units to file proofs of claim, § 3002(c)(1), a thirty-day period to file proofs of claim arising from

The Creditors requested an extension of time to file their proof of claim due to Davila Torres' incompetency. The bankruptcy court denied this request, finding instead that the late filing was the result of Vicenty Cardona's absence and the lawyers' lack of diligence. These findings, however, were not relevant to the question of whether the court should extend time under Rule 3002(c)(2). First, as discussed earlier, the Debtor *chose* Davila Torres as the representative of the claim actually held by the conjugal partnership. As such, the only relevant concern is the competency of Davila Torres as representative of the partnership.

■■■ Second, although the notices sent to Davila Torres satisfied the requirements of due process, and thus generally imposed upon the Creditors and their attorneys the duty to diligently monitor the case, the constitutionality of the notices does not dispose of the question whether an extension of time should be granted under Rule 3002(c)(2). The very language of the exception makes this clear by allowing an extension for either the incompetent creditor *or their representative.* The Advisory Committee Notes to Rule 3002 do not address subsection (c)(2), but the exception clearly takes into consideration that the usual diligence required of an attorney may be hindered by a client's mental incapacity. The mere fact that Davila Torres was represented by an attorney is not dispositive; rather, Davila Torres' dementia may have presented considerable barriers to his ability to effectively communicate with and direct his attorneys and to assess whether the conjugal partnership was being competently represented.

In the present case, the bankruptcy court found, but without taking evidence, that Davila Torres was not incompetent at "relevant times," including the dates when the Notice of Filing and the Bar Date Notice were mailed to Attorney Davison Lampon's office address. Much of the evidence submitted to the court was to the contrary. Prior to the filing of the bankruptcy case and service of the notices, Davila Torres had been diagnosed with dementia by Drs. Davila Franco and Rodriguez Hernandez. Both doctors also found Davila Torres incapable of managing his social security benefits in February and April of 2000, respectively. Although it appears that Davila Torres signed, and had notarized, a Power of Attorney in favor of Vicenty Cardona in May of 2001, the mere fact that a notarization presumably signifies that the signer has the mental capacity to execute the document is not dispositive for the purposes of Rule 3002(c)(2).

Yet, despite these apparent discrepancies between the evidentiary record and the bankruptcy court's findings, this Panel is not prepared to find that the court was clearly erroneous in its factual findings or abused its discretion in denying the request for an extension of time to file the proof of claim. Rather, this Panel holds that the bankruptcy court should have taken evidence on the competency of Davila Torres during the relevant periods before reaching any conclusion under Rule 3002(c)(2).

■■■ Rule 3002(c)(2) requires the bankruptcy court to consider three issues: (1) whether the creditor was incompetent, re-

---

judgment, even if the thirty days is beyond the claims bar date, § 3002(c)(3), court discretion to set the deadline for filing proofs of claims arising from the rejection of an executory contract or unexpired lease, § 3002(c)(4), and

the commencement of a "new" ninety-day period for filing proofs of claim where the trustee notifies the court that a dividend may be paid in a case previously noticed as "no asset." § 3002(c)(5).

gardless of representation by an attorney; (2) whether an extension of time would be in the "interests of justice"; and (3) whether an extension would "unduly delay administration of the case." Fed. R. Bankr.P. 3002(c)(2); *see also Fidelity Fin. Serv., Inc. v. Montgomery Co. Dep't of Human Resources (In re Davis)*, 237 B.R. 177, 184 (M.D.Ala.1999).

The Bankruptcy Code and Rules contain no definition of "incompetent" as used in Rule 3002(c)(2), and the Advisory Committee Note to Rule 3002 does not address subsection (c)(2). This Panel is unaware of any reported case that interprets the meaning of the term "incompetent person" in this context. One bankruptcy court addressing the meaning of competency regarding the appointment of a *guardian ad litem* for an allegedly incompetent debtor noted that:

> Because there is no federal law dealing with the determination of mental incompetency in the sense of management of an individual's personal and business affairs . . ., and since this has traditionally been an area left to the various state laws, . . . it would be appropriate to look to the laws of . . . the state of the Debtor's present domicile for guidance . . .

*In re Moss*, 239 B.R. 537, 539 (Bankr. W.D.Mo.1999) (citing *Moody v. Smith (In re Moody)*, 105 B.R. 368, 371 (S.D.Tex. 1989)).

The record before the Panel contains little evidence to support the bankruptcy court's determination that Davila Torres was not incompetent at the time the Notice of Filing and the Bar Date Notice were served. However, on remand, the court will be able to take further evidence and testimony concerning Davila Torres' mental capacity before and during the pendency of the Debtor's bankruptcy case, guided by similar determinations of mental incompetency under Puerto Rican law.

■ As with the meaning of incompetency, there is little case law regarding issues to be considered in determining whether an extension of time to file a proof of claim under Rule 3002(c)(2) would be "in the interests of justice." This is a fact-sensitive determination that is best made by the bankruptcy court on remand.

Finally, the bankruptcy court must consider whether the delay caused by the late filing of and distribution on the Creditors' claim would unduly delay the administration of the Debtor's case. Delay alone is not the concern; rather, the question is whether the delay is "undue." [18] Again, this is a case-specific determination, on which findings must be made on remand.

## V. *CONCLUSION*

For the foregoing reasons, this Panel concludes that the bankruptcy court did not err in its findings and did not abuse its discretion in refusing to reconsider its findings that the Creditors had adequate notice of the bar date for claims and had adequate notice of the plan which is now binding upon them. The bankruptcy court did not err in refusing to dismiss the case and did not abuse its discretion in declining to reconsider its order denying the Creditors' request for dismissal or to vacate confirmation of the plan. The bankruptcy court also did not err in denying the Creditors' motion to file a late proof of claim on grounds of excusable neglect.

---

[18]. The bankruptcy court may consider, for example, that (i) all secured creditors have been paid in full, (ii) there are no other unsecured creditors whose dividends would be delayed by the late filing of the Creditors' claim, and (iii) the Debtor, who received a significant surplus, has long been on notice that the timeliness of the Creditors' claim has been in dispute.

Nevertheless, this Panel believes that the bankruptcy court acted without proper evidentiary foundation when it refused to extend the time for Creditors to file a late proof of claim under Rule 3002(c)(2). Accordingly, the case will be remanded to the bankruptcy court for an evidentiary hearing and the entry of relevant findings in connection with the factual issues under Rule 3002(c)(2).

The denial of the motion to dismiss is **AFFIRMED**. The denial of the motion to file a late proof of claim is **VACATED** and the case is **REMANDED** to the bankruptcy court for further proceedings consistent herewith.